PENN MUTUAL LIFE INSURANCE COMPANY v. LEE MANER.

No. 1836.   Decided May 6, 1908.

**Insurance—Damages and Attorney's Fees.**

A letter from the attorneys of the beneficiary of a policy of life insurance calling attention of the insurer to the fact that the claim had been placed in their hands and to the liability for penalty and attorney's fees for failure to pay after demand made therefor, and saying, "we think it courteous and fair to you to notify you and request payment in advance of litigation" was a sufficient "demand made" within the meaning of the statute. (Rev. Stats., art. 3071) to render the insurer liable for the penalty and attorney's fees on failure to pay the amount of the policy within the time it specified. (Pp. 563, 564.)

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Dallas County.

*Locke & Locke,* for appellant.—In order to perfect her right of action for attorney's fees and damages, it was necessary that the plaintiff should make legal demand for the payment of the policy before the institution of her suit. Rev. Stats., art. 3071; Northwestern Life Assur. Co. v. Sturdivant, 24 Texas. Civ. App., 331; Iowa Life Ins. Co. v. Lewis, 187 U. S., 335; Employers' Liability Assur. Corp. v. Rochelle, 13 Texas Civ. App., 232; Security Trust & Life Ins. Co. v. Hallum, 73 S. W. Rep., 554; New York Life Ins. Co. v. English, 70 S. W. Rep., 440.

The plaintiff did not make upon the company at any time before the institution of her suit such a demand for the payment of the policy as was required by the statute in order to perfect her right

to attorney's fees and damages. Employers' Liability Assur. Corp. v. Rochelle, 13 Texas Civ. App., 232; Northwestern Life Assur. Co. v. Sturdivant, 24 Texas Civ. App., 331; Iowa Life Ins. Co. v. Lewis, 187 U. S., 335; 1 Daniel on Negotiable Instruments, secs. 644, 645 A; Parker v. Stroud, 98 N. Y., 379; Bynum v. Apperson, 9 Heiskell (Tenn.), 632; Rowe v. Young, 2 Brod. & Bing., 165; Halls v. Howell, Harper (S. Car.), 426; Barnes v. Vaughan, 6 R. I., 259; Stuckert v. Anderson, 3 Wharton (Pa.), 116; Musson v. Lake, 4 How., 262; Shaw v. Reed, 12 Pick., 132; Van Sant v. Francisco, 55 Neb., 650; Universal Life Ins. Co. v. Devore, 83 Va., 267; Blodgett's Estate v. Converse's Estate, 60 Vt., 410.

On general principles it may be said without fear of successful contradiction that a legal demand for the payment of an obligation can be made only at a time and place and under circumstances entitling the person making it to payment. The debt must be due. Ordinarily the demand must be made at the place where it is payable. The demand must be made by a person entitled to receive payment. The evidence of the obligation must be tendered, or at least it must be at hand, for surrender.

*Crawford & Lamar,* for appellee.—Plaintiff, through her agent and attorneys, made repeated demands upon the defendant for the payment of the policy in suit, and upon failure to pay the same the insurance company became liable for the penalty and attorneys' fees as prescribed by law. Rev. Stats., 1895, arts. 3071, 3268, secs. 1, 6, 3096-dd-ee, Final Title, sec. 3; Acts of 1903, p. 94; Fidelity, etc., Life Assn. v. Mettler, 185 U. S., 308.

The demand contemplated by the statute was such as would put the company upon notice of the claim made, after default by the insurer upon the terms of the policy, and not such as contemplates a necessary surrender of the policy itself, in the event of payment thereof. Rev. Stats., art. 3096-dd-ee; Acts of 1903, p. 94; 37 A. & E. Ency. Law (2d ed.), 550; Mutual Life Ins. Co. v. Jarboe, 42 S. W. Rep., 1098.

MR. JUSTICE BROWN delivered the opinion of the court.

Certified question from the Court of Civil Appeals for the Third Supreme Judicial District, as follows:

"On November 21, 1905, appellee, as plaintiff, commenced this suit against appellant, as defendant, seeking a recovery upon a policy of life insurance, No. 282557, issued by appellant for the sum of $5,000, upon the life of appellee's husband, F. B. Maner. The plaintiff sued for $5,000, the face of the policy, for legal interest, for reasonable attorney's fees and for 12 percent damages. She alleged such demand and refusal to pay as would entitle her to recover 12 percent damages and reasonable attorney's fees, as prescribed by article 3071 of the Revised Statutes.

"Appellant filed an answer, admitting the execution and delivery of the policy, the death of the insured and receipt of proofs of death, and its liability for the face of the policy and interest, and pleaded a tender of $5,075, on November 23, 1905. It also averred that

there had been no such demand made by the plaintiff and refusal by the defendant as would entitle the plaintiff to recover statutory damages and attorney's fees.

"Thereafter the plaintiff filed a supplemental petition, alleging, in substance, that the policy nor proofs of loss did not require a demand at the home office of the defendant, and that it was its custom to make payments at the home of the beneficiary, and that the defendant had waived a demand for payment, and thereby became liable for the penalty and attorney's fees.

"Upon the issues thus submitted the case went to trial, and after hearing all the testimony, the trial court instructed the jury to return a verdict for the plaintiff "for the sum of $5,000, with 6 percent interest thereon from July 29, 1905, to this date, and the statutory damages of 12 percent on $5,000, and 10 percent on $5,000, as reasonable attorney's fees, all of which amounts in the aggregate to $6,337.50." The jury found as directed, judgment was rendered accordingly, and the defendant has appealed, and among other matters, assigns as error and presents for decision the action of the trial court, in directing a verdict for the plaintiff for attorney's fees and damages, and in refusing an instruction requested by the defendant directing a verdict for it upon those issues.

"The uncontroverted testimony shows that Dr. Maner was killed June 26, 1905, that at the time of his death he held three insurance policies upon his life issued by appellant, one of which is the policy sued on in this case, and is for $5,000, payable to appellee at appellant's home office in the city of Philadelphia, upon receipt of satisfactory proof of death of the insured during the life of the policy. Correspondence passed between appellant company and appellee and their respective agents and attorneys, as follows:

" 'Itasca, Texas, June 30, 1905.

Mr. Victor C. Barringer, Gen. Agent,
     San Antonio, Texas.

Dear Sir:

Having been delegated by the interested parties I take this method of notifying you of the death of Dr. F. B. Maner of this city who holds three policies in the Penn Mutual.

Very respectfully yours,

W. H. Coffman.'

" 'San Antonio, Texas, July 1, 1905.

Mr. W. H. Coffman,
     Itasca, Texas.

Dear Sir:

Your favor of June 30th is at hand, notifying us of the death of Dr. F. B. Maner. We received notice of Dr. Maner's death a day or two ago and we have written to the company, asking them to send out proofs of death.

Yours very truly,

Victor C. Barringer, Gen. Agt.<br>Per————————'

" 'San Antonio, Texas, July 18, 1905.

Mr. W. H. Coffman,
      Itasca, Texas.
Dear. Sir:

In further reference to your letter notifying us of the death of
Dr. F. B. Maner, insured under numbers 282557, 291544 and 294031,
we herewith enclose you blanks for proofs of loss. These blanks
should be completed as per the printed instructions on their backs
and returned to this office. By our records these policies appear as
follows: Nos. 282557 and 291544, to Mrs. Lee Maner, wife of the
insured, if she survive him, otherwise to the insured's estate. No.
294031, to Franklin M. Maner, son of the insured, or his estate if
he survive the insured, otherwise to the insured's estate.

When returning the completed proofs to this office, kindly have
them accompanied by a certified copy of the coroner's inquest.
                              Yours very truly,
                                   Victor C. Barringer, Gen. Agt.,
                                   Per————————————————'

" 'Itasca, Texas, July 21, 1905.

Mr. Victor C. Barringer, Gen. Agt.,
      Penn Mutual Life, San Antonio, Texas.
Dear Sir:

Enclosed please find proof of death in the case of Dr. F. B.
Maner of this city. You will note that policy No. 294,031 is payable
to Franklin M. Maner, who is a minor. Mrs. Lee Maner, his
mother, will qualify as his guardian and as soon as that is done I
will send in the claimant's certificate with guardian papers attached.

The papers enclosed referring to the claim of Mrs. Lee Maner,
claimant under policies No. 282557 and No. 291544, are complete as
we understand them.          Yours very truly,
                                   W. H. Coffman.'

" 'San Antonio, Texas, July 26, 1905.

Mr. Wm. H. Coffman,
      Itasca, Texas.
Dear Sir:

We are in receipt of your favor of the 21st and beg to advise that
the completed proofs of death on policies No. 282557 and No.
291544, Maner have been sent to the company. We will let you
hear from us on receipt of their reply.
                              Yours very truly,
                                   Victor C. Barringer, Gen. Agt.,
                                   Per————————————————'

" 'Itasca, Texas, August 26, 1905.

The Penn Mutual Life Insurance Co.,
      Philadelphia, Penn.
Dear Sirs:

As agent of Mrs. Dr. F. B. Maner of this city, who holds policies
No. 282557, No. 291544 and No. 294031, aggregating $25,000 pay-
able to herself and $10,000 payable to her son, I write in her behalf.

It has now been two months since Dr. Maner was foully murdered on the public streets of this city and as there can be no possible question about his death we think the claim should be paid without further delay.

The Equitable Life claim was paid in two weeks—the New York Life in three and the Union Central in four weeks which can not but suggest to me that your company has had ample time for the adjustment of this claim, which I presume is having your attention, but as we have never had any word whatever from the company or its agents I would be pleased to hear from you or furnish you any information that you may desire, if any.

Very respectfully,

W. H. Coffman,

Agent for Mrs. Lee Maner.'

" 'Philadelphia, August 31, 1905.

Mr. W. H. Coffman, Vice-President,

Itasca National Bank, Itasca, Texas.

Dear Sir:

Your esteemed favor of the 26th instant is received, in regard to policies Nos. 282557, 291544 and 294031, Franklin B. Maner. In reply beg to say that up to this time we have not received completed papers so far as the claim for the proceeds of policy No. 294031, which is payable to the son, is concerned. We are also making an investigation of the loss which has not yet been completed, but if we desire anything from you additional we will communicate with you.              Yours truly,

Harrison S. Gill, Supervisor.'

" 'Itasca, Texas, September 4, 1905.

Mr. Harrison S. Gill, Supervisor,

Penn Mutual Life Insurance Company, Philadelphia.

Dear Sir:

Yours of August 31st to hand and carefully noted. In regard to claim No. 294031 (policy) in favor of Dr. F. B. Maner's son. The papers are complete with the exception of the guardianship which has been applied for and will be issued this month. I can send them ahead and forward certificate of guardianship when issued if you require or suggest. With thanks for prompt reply, I beg to remain,

Very respectfully,

W. H. Coffman.'

" 'Itasca, Texas, September 13, 1905.

The Penn Mutual Life Insurance Co.,

Philadelphia, Penn.

Dear Sirs:

Unless I can have some definite expression from you in regard to payment of claims of Mrs. Lee Maner upon the life of her husband, F. B. Maner, I will upon the advice of my attorney bring suit in the courts at Dallas, Texas, for the payment of those claims upon which proofs have been sent in. There can be no possible excuse for

the delay of payment on claim $5,000 on policy No. 282557 and No. 291544 $20,000 and as indicated to you before proof will be sent in on policy No. 294031 as soon as guardianship papers are issued which 'will be this month some time.

The notes which were recalled before they were due would have been paid at maturity as this bank had already had instructions from Dr. Maner to remit for them when due.

Very respectfully yours,

W. H. Coffman,

Agent for Mrs. Lee Maner.'

" 'Dallas, Texas, Oct. 11, 1905.

The Penn Mutual Life Ins. Co.,

Philadelphia, Pa.

Gentlemen:

Mrs. Lee Maner, widow of Dr. F. B. Maner, of Itasca, Hill Co., Texas, has placed in our hands for collection your three (3) policies Nos. 282557, 291544 and 294031 on the life of Dr. Franklin B. Maner. You have heretofore received proofs of death.

As the statutes of Texas provide for attorney's fees and a penalty in case of suit, we think it courteous and fair to you to notify you and request payment in advance of litigation.

Very respectfully yours,

Dic. WLC|L.                    Crawford, Lamar & Crawford,

Attorneys.

" 'Philadelphia, Oct. 17, 1905.

Messrs. Crawford, Lamar & Crawford,

Attorneys at Law, 255 Main Street, Dallas, Texas.

Gentlemen:

Your esteemed favor of the 11th instant is received, advising me that Mrs. Lee Maner has placed in your hands for collection policies Nos. 282557-291544-294031 on the life of the late Dr. Franklin B. Maner.

In reply beg to state that Messrs. Locke & Locke, our attorneys in your city have full charge of this matter, and I would respectfully refer you to them concerning same.

We beg to thank you for your courtesy, and trust for a favorable outcome of the matter.            Yours truly,

Harrison S. Gill, Supervisor.'

" 'Oct. 26, 1905.

Mess. Crawford, Lamar & Crawford,

Attorneys for Lee Maner and Franklin M. Maner,

Dallas, Texas.*

Gentlemen:

Confirming the 'coɪ versation which the writer' had with your Col. Crawford on the 20th inst., we beg to say that the Penn Mutual Life Insurance Company refuses to be bound by its policy No. 291544 for $20,000 issued under date of February 23, 1905, on the life of Franklin B. Maner in favor of his wife, Lee Maner; and that it

refuses to be bound by its policy No. 294031, for $10,000 issued under date of March 20, 1905, upon the life of Franklin B. Maner in favor of his son, Franklin M. Maner; and that it is ready and willing to pay in full, upon proper surrender thereof, its policy No. 282557, for $5,000, issued under date of November 5, 1904, on the life of Franklin B. Maner in favor of his wife, Lee Maner.

Yours truly,<br>Locke & Locke,<br>Attorneys for The Penn Mutual Life Insurance Company.'

"On September 2, 1905, the senior member of the firm of Locke & Locke received two letters, one from appellant's supervisor and the other from one of its home office attorneys, asking his opinion as to the company's liability on the three policies referred to in the correspondence above set out. He replied September 6, 1905, in the name of his firm, giving his opinion. On October 2, 1905, Locke & Locke received from appellant's supervisor two letters dated respectively September 22 and September 28, and with the letter of September 28 was the company's check for $5,000, payable to the order of appellee, Mrs. Lee Maner, expressed to be in full settlement of policy No. 282557. On receipt of these letters Locke & Locke replied asking for some further explanation. On the afternoon of October 7 they received by telegram from appellant's supervisor the explanation desired, which was, in effect, an instruction to do as they thought best about delivering to Mrs. Maner the $5,000 check. At that time it does not appear that Mrs. Maner had any representative in Dallas, Texas, and she resided at Itasca, in Hill County, Texas. Mr. Maurice E. Locke, the senior member of the firm of Locke & Locke, testified that he had charge of this matter for his firm at that time, and that early on the morning of October 8, 1905, he was compelled to go to El Paso to try a lawsuit, which was expected to consume two or three days, but which detained him until the night of October 19; that on his return to his office on the morning of October 20, he found there the letter of October 11, from Crawford, Lamar & Crawford to the defendant company. He then went to their office and had a conference with Col. W. L. Crawford. Mr. Locke expressed a desire to compromise the entire claim of $35,000 on the three policies and a willingness to pay some $7,000 or $8,000 in settlement. Col. Crawford declined to make such an adjustment. Mr. Locke then informed Col. Crawford that he would pay the $5,000 policy now in suit, but would decline to pay anything upon account of the other two policies, and would litigate as to them. He inquired of Col. Crawford whether the latter had a written power of attorney to receive payment and give an acquittance of the $5,000 policy, and was answered in the negative. Col. Crawford said that he could get the personal receipt of Mrs. Maner in the course of two or three days and that he had been employed as her attorney and had all the authority such employment conferred. Up to this point no question had arisen as to how much was due upon the $5,000 policy. Col. Crawford then suggested that Mrs. Maner ought to have interest on the policy; and he testified he demanded that she be reimbursed for the money that

she had paid out for attorney's fees. No agreement was reached at that conversation as to the amount which the company should pay upon account of the $5,000 policy.

"One or two other conversations occurred concerning which the participants are not wholly in agreement, and which it does not appear essential to state. The main substance of them was that Col. Crawford was trying to obtain payment of attorney's fees, which Mr. Locke was not willing to pay. These negotiations culminated according to the testimony of Mr. Locke in a conversation had over the telephone about November 17 or 18, between Mr. Locke and Mr. Lamar. Mr. Locke's testimony in regard to this conversation was as follows:

" 'In that conversation (referring to a conversation had November 13 between Col. Crawford and Mr. Locke) Col. Crawford said that he had at his office some correspondence that he was satisfied constituted a demand on the company for the payment of this policy. I asked if he would let me see that if I called at his office for it, and he said that he would, that Mr. Lamar would show it to me. I called at the office that same afternoon, and Mr. Lamar did show me the letters, and they are the same letters that have been read in evidence here. A day or two after that visit to the office of Crawford, Lamar & Crawford, that is to say about November 17 or possibly November 18, Mr. Lamar called me up over the telephone, and as I remember it, he asked me whether I had yet heard from the company in regard to this matter, or whether we would pay interest and attorney's fees, etc. I told him that we had not heard, but that we had determined upon our course; that we would pay the principal and interest of the policy, but that we would not pay attorney's fees and damages. My recollection is that Mr. Lamar then said that he would consult with Mr. Crawford about the matter and there the conversation ended. After that the suit was brought on November 21.'

"Mr. Lamar's testimony on the subject was as follows:

" 'Q. Do you remember that on the afternoon of the day Col. Crawford and I had that conversation concerning which he has testified, which was November 13, I called at your office and asked to see the letters concerning which Col. Crawford had spoken to me? A. I don't remember the exact date, but I remember your calling there and my showing you some letters, from which you made some memoranda. Q. Now, do you remember that two or three days after that we had a conversation over the telephone, in the course of which I told you that, or you asked, did you not, first, whether I had heard from the company about what it was going to do in regard to this policy, and I told you that I had not, but I had made up my mind what to do. Do you remember that such a conversation as that occurred? A. With you personally? Q. That the company would pay the principal and interest, but would not pay attorney's fees and damages? A. I can't say that I do. I won't say that we did not have that conversation, but I can't remember it as a distinct conversation. Q. Do you remember a telephone conversation on the subject? A. I remember having had some telephone conversation with

some member of your firm.  I remember once that Eugene was up there on this matter.  Q.  But now, this telephone conversation, do you remember anything about that, or what was said in that conversation?  A.  I wouldn't want to swear at this time that I do, no, sir.  Q.  You remember that it was a telephone conversation?  A.  It seems to me that we did have some telephone conversation, but I don't remember what it was.  That is my best recollection at this time.'

"After this there was a conversation between Mr. Lamar and Mr. Eugene P. Locke, in the course of which Mr. Lamar was informed again that the company would pay principal and interest, but not attorney's fees nor damages and Mr. Lamar offered to accept such payment and leave open for litigation the question of attorney's fees and damages, which offer was declined by Locke & Locke.  The · next thing that happened was the institution of this suit, November 21, 1905.  Mr. Locke learned of the filing of the suit by seeing it in the list of new suits in the morning News on the morning of November 23.  Soon after reaching his office he wrote a letter of tender to Crawford, Lamar & Crawford, and went to the office of that firm with the letter and $5,075 in currency, and made a tender of that amount in full settlement of the claim as shown by the letter. · Mr. Lamar, to whom the tender was made, said that he did not feel authorized to accept the money at that time, but would confer with Col. Crawford and their client about the matter.  The next morning a letter was received in reply from Crawford, Lamar & Crawford.  The two letters above referred to are as follows:

" 'Nov. 23, 1905.

Mess. Crawford, Lamar & Crawford,
      Attorneys of Record for Lee Maner, Dallas, Texas.
Gentlemen:
    No. 933, Maner v. Penn Mutual.
We tender you herewith the sum of five thousand seventy-five dollars, in full payment of policy No. 282557, issued under date of November 5, 1904, by the Penn Mutual Life Insurance Company to Franklin B. Maner, in favor of his wife, Lee Maner.  This we do in pursuance of our offer made to you on October 20, 1905, in conversation, and repeated on October 26, 1905, by letter, to pay said policy in full, notwithstanding any legal defense which might exist, whereby legal liability thereunder would be defeated.
Yours very truly,<br>Locke & Locke, Attorneys for<br>The Penn Mutual Life Insurance Company.'

" 'Dallas, Texas, Nov. 23, 1905.

Messrs. Locke & Locke,
      Attys. for the Penn Mutual L. I. Co., Dallas, Texas.
Gentlemen:
We have your letter of the 23d inst., notifying us of tender of $5,075 in full payment of policy as follows:  "We tender you here-

with the sum of five thousand seventy-five dollars, in full payment of policy No. 282557, issued under date of November 5, 1904, by the Penn Mutual Life Insurance Company to Franklin B. Maner, in favor of his wife, Lee Maner" (quoted from your letter of this date).

" 'You state this is done in pursuance of offer made to us October 20 and repeated in your letter of October 26, 1905. We deny the correctness of this statement. We presume you knew this morning. before you made any tender or wrote your letter of this date, that suit had been filed on the policy in question on the 22d inst. We brought this suit because we have been unable to obtain a fair settlement of this claim.          Yours truly,
Dic. WLC|L.                Crawford, Lamar & Crawford,
                                                    Attorneys.'

"One of the printed instructions on the blank furnished by the company for the making of proofs of death reads as follows:  "The intervention of any third person is not necessary for the collection of the claim, and the payment to any person of a commission for services in regard thereto is entirely unnecessary.'

"Over the objection of the defendant the plaintiff proved by the witness Maurice E. Locke that it was the custom of the company where there were no complications of any kind, to make payment of policies through the local agencies by sending checks in favor of the beneficiaries to be surrendered in exchange for the policies.   Over a like objection, the plaintiff made substantially the same proof by the witness, W. E. Brown.

"On October 10 or 11, 1905, the plaintiff, through her agent, W. H. Coffman, employed the law firm of Crawford, Lamar & Crawford, now Crawford & Lamar, of Dallas, Texas, to attempt to collect this and the other two policies issued by the defendant company upon the life of Dr. Maner, and paid them a retainer of $500.   It was shown by the testimony of Mr. Locke that he did not attempt or offer to deliver the $5,000 check sent him by the defendant to the plaintiff in person, or to anyone representing her.   It was also shown by the same witness that while he told Col. Crawford on October 20, that he had the money to pay the $5,000 policy involved in this case, he did not then, or at any other time, disclose to Col. Crawford or the plaintiff, or any other representative of hers, that he had in his possession the $5,000 check; and he testified that one of his reasons for withholding such information was for the purpose of effecting a compromise or settlement as to all three of the policies.

"Other questions are presented which are not certified, and therefore the facts pertaining to them are not stated.

"With the foregoing statement and explanation, the Court of Civil Appeals certifies to the Supreme Court for decision these questions:

"1.   Do the facts and evidence set out above show such demand by appellee and refusal to pay by appellant as rendered it proper for the trial court to instruct a verdict for appellee for statutory damages and for ten percent attorney's fees, assuming that in all other respects the clear and undisputed facts showed that she was entitled to recover such damages and attorney's fees?

"2. If the first question be answered in the negative, then should the question of demand and refusal have been submitted as a question of fact to the jury, or should the court have instructed a verdict for appellant upon the subject of damages and attorney's fees?"

To the first question we answer, yes. The right of the appellee to recover 12 percent damages and attorney's fees in this case depends upon the sufficiency of the demand for payment made by her attorneys, Crawford, Lamar &. Crawford. If the statute was complied with, then she is entitled to recover the damages and attorney's fees, otherwise, not. The following article of the Revised Statutes prescribes the demand to be made:

"Art. 3071. In all cases where a loss occurs and the life or health insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve percent damages on the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of such loss."

After waiting for some months for a settlement of her claim, Mrs. Maner, through her agent, Mr. Coffman, employed Crawford, Lamar & Crawford, of Dallas, to collect the policy. On the 11th day of October, 1905, the attorneys addressed to the insurance company at its home office in Philadelphia, the following letter:

"Dallas, Texas, Oct. 11, 1905.

The Penn Mutual Life Ins. Co.,
        Philadelphia, Pa.
Gentlemen:

Mrs. Lee Maner, widow of Dr. F. B. Maner, of Itasca, Hill Co., Texas, has placed in our hands for collection your three (3) policies Nos. 282557, 291544 and 294031 on the life of Dr. Franklin B. Maner. You have heretofore received proofs of death.

As the statutes of Texas provide for attorney's fees and a penalty in case of suit, we think it courteous and fair to you to notify you and request payment in advance of litigation.

                        Very respectfully yours,
Dic. WLC|L.                    Crawford, Lamar & Crawford,
                                        Attorneys."

The insurance company acknowledged receipt of this letter and sent to its attorneys, Locke & Locke, of Dallas, a draft for the amount of the policy, leaving it to the attorneys to do as they might deem best with regard to the payment. The attorneys for the company did not disclose to Mrs. Maner's attorneys the fact that they had the draft, but entered into negotiations with them with regard to the compromise of this policy, and two others, but the parties failed to agree, and, on the 22d day of November, 1905, suit was filed upon the policy for $5,000 claiming damages, interest and attorney's fees. On the next day, 23d of November, Locke & Locke tendered to the

attorneys of Mrs. Maner $5,075, being the principal of the policy and 6 percent interest thereon.

The sole question before us is, did the letter of Crawford, Lamar & Crawford constitute such a demand as is required by Article 3071, above copied. Bouvier defines the word "demand" thus: "A requisition or request to do a particular thing specified under a claim of right on the part of the persons requesting." (9 Am. & Eng. Ency., Law p. 198.) A demand being a request to do a particular thing specified under a claim of right, it follows that a request to do the same thing under the same claim of right would be equivalent to a demand for the same thing. The letter which expressed the request did so under a claim of right in favor of Mrs. Maner against the insurance company and requested the performance of a particular thing, that is, the payment of the money due to her upon the policy. If the word "demand" had been used instead of "request," the company would not have more definitely understood that the money was then and there demanded and that a failure to pay the money would result in a suit upon which the damages and attorney's fees would accrue. It does not matter in what terms the demand may be couched, the substance of it is that there is an assertion of a right and a demand for the recognition and performance of the obligation upon which such right rests. The fact that the attorneys for the insurance company proffered to pay the principal and six percent interest before the suit was brought does not affect the question, because there was no actual tender of the money and, as it appears from the statement, the time had elapsed within which the money should have been paid according to the terms of the policy, therefore, upon the demand and failure of the company to make payment the right to damages and attorney's fees accrued and became as much a part of the claim as the principal and the interest and nothing done thereafter by the insurance company could divest that right.