[Opinion delivered March 7, 1882.]

## THE GEORGIA HOME INS. CO. V. J. JACOBS.

### (Case No. 654.)

1. INSURANCE.— When the written portion of a policy of insurance describes the policy insured in general terms, which would embrace articles which by the printed terms of the policy are denominated extra hazardous, and prohibited, the written portion of the policy will govern, and the keeping of articles thus described as extra hazardous would not operate as a breach of the conditions of the policy.

2. INSURANCE.— A policy of insurance described in writing the property insured as consisting of "family groceries, wines, liquors, tobacco and cigars," and in the printed portion of the policy, and by the printed terms of the policy, *fire-works* were designated as specially hazardous. *Held,*

    (1) A construction that would include fire-works in the property insured, and thus avoid the effect of the printed condition, would be unauthorized.

    (2) It is competent for the insurer to prescribe the terms on which the risk is assumed, when they are not violative of law and do not contravene public policy, and a violation of them releases the insurer from liability.

3. WAIVER — INSURANCE.— Though by the terms of a policy of insurance the insurance company may have sixty days after proofs are made to determine the matter and pay the loss, still if before the expiration of that time an authorized agent of the company denies the justice of the claim, and announces that it will not be paid, suit may be at once brought to enforce payment of the policy.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Suit brought March 16, 1874. The following from the brief of appellee is adopted as a statement of the case:

This is an action brought by the appellee for the use of J. M. Tryon against the appellant, upon a fire insurance policy issued by appellant to appellee for $800, upon a stock of goods kept by appellee in his store in the city of Houston, and which were destroyed by fire during the existence of the policy.

Defenses filed were general demurrer and special exceptions, assigning following causes:

*First.* No reason is given why the suit is brought for use of Tryon.

*Second.* No bill of particulars of the articles alleged to have been destroyed by fire is given, nor the value of each article.

*Third.* It is not alleged whether or not any of the goods insured were saved.

*Fourth.* The origin of the fire is not alleged, nor was plaintiff to blame therefor.

*Fifth.* That the amended petition contradicts the affidavit of plaintiff as to the ownership of goods.

*Sixth.* That Tryon is not named in proof of loss filed.

Also a general denial, with statement of how plaintiff presented his proof of loss, and special answer charging forfeiture of the policy, because plaintiff represented his goods to have been of too great value; that the goods insured solely belonged to plaintiff and to no one else, whereas in fact they belonged to J. M. Tryon; that no proper proof of the loss sustained by plaintiff had ever been presented to defendant; that the fire was caused by plaintiff; that the goods lost by the fire did not exceed in value $200; denies that any agent of defendant ever waived the making of the proof of loss; that plaintiff did not in twelve months after fire make proof of loss;

that Tryon has never made proof of loss; and that the fire was caused by the gross negligence of plaintiff.

Verdict and judgment for appellee for $874.66, interest included.

*Crank & Webb*, for appellant.

*Chas. Stewart*, for appellee.

WATTS, J. COM. APP.— By the policy the company insured appellee's stock, consisting of "family groceries, wines, liquors, tobacco and cigars," from the 19th day of April, 1873, to the 19th day of April, 1874, to the amount of $800. In the fifth clause of the policy it is in effect stipulated that if appellee should store, vend or use any article or merchandise denominated extra hazardous or specially hazardous in the class of hazards printed on the back of the policy, except specially agreed to in writing upon the policy, then and from thenceforth, so long as the same be so appropriated, applied or used, the policy should cease and be of no force or effect.

Amongst the articles enumerated and named in the class of those denominated "specially hazardous," as printed on the back of the policy, is "fire-works." It is claimed by appellant that appellee kept in his stock so insured, and against the contract of assurance, "fire-works," and that the verdict of the jury is in this particular against the evidence.

There is no pretense that the appellant had agreed in writing or otherwise that appellee might store, use or vend "fire-works" in his stock and in connection with his said business.

Appellee testified upon the trial as follows: "I had fire-works in the store at the time of the fire, and had packed them up a week before the fire. I don't know what the fire-works were worth. . . I don't remember that I told Steele, before or after the policy issued,

that I had fire-works in the store, but he knew that I had before kept fire-works at another store." In an invoice of his stock appended to a bill of sale made by appellee to one J. M. Tryon, dated 12th day of April, 1873, the following item appears, viz.: "One lot fire-works, $92." Two of appellant's witnesses, to wit, Mr. and Mrs. Kilppur, testified that appellee had some fire-works in the store; the latter says the fire originated in the back part of the store, where appellee had put the fire-works the night before; that about one or two o'clock at night she was aroused by an explosion down stairs in the store, and the fire was running up the walls of the house, and that she barely had time to escape with her two children from the rooms over the store where she lived.

There is nothing in the record that in the slightest degree tends to contradict the testimony of appellee himself and that of the two witnesses for appellant, to the fact that there were fire-works in the store at the time of the fire; and for the purposes of this appeal that fact must be considered as conclusively established.

The question then arises, under the facts and circumstances of this case, did the keeping of these fire-works by appellee avoid the policy or render it of no effect?

It may be stated as a general rule, that where the written portion of the policy describes the property insured as of a certain class, as in this case "family groceries, wines, liquors, tobacco and cigars," and that this class would embrace a class of articles which by the printed terms of the policy are termed extra hazardous or specially hazardous, and are by these printed terms prohibited, that the written will overcome the printed portion of the policy, and then the keeping such articles would not operate as a breach of the conditions of the policy.

Again, as a general rule it may be shown that it is usual to keep, as a part of the class insured, articles that

are denominated extra or specially hazardous in the printed conditions of the policy; and if it be shown that it is usual that such articles are kept as part of the stock insured, then it will be considered that the printed prohibitory clause is overcome by the written description of the class of property insured. Wood on Fire Insurance, p. 149, and authorities cited; May on Insurance, pp. 250, 251, and authorities cited.

There was no effort in this case to show that "fireworks," which are termed in the printed conditions of the policy as "specially hazardous," are usually kept as part of a stock of family groceries, wines, liquors, tobacco and cigars.

Fire-works are preparations of gunpowder, sulphur and other inflammable materials, used for making explosions in the air on occasions of public rejoicing, or for purposes of war; that is, such is the definition given by standard lexicographers. In the absence of evidence upon that point, we could not say that "fire-works" would come within the meaning of the terms "family groceries, wines, liquors, tobacco and cigars." Nor does it appear to us that "fire-works" are compatible, and necessarily associated commercially, with family groceries, wines, liquors, tobacco and cigars. As "fire-works" are mentioned *eo nomine* in the list of specially hazardous articles which by the terms of the printed conditions upon the policy were prohibited, under the circumstances of this case, a construction of the policy that would put such articles in the class insured, and in this way avoid the effect of the printed condition, would be unauthorized. That is, there is nothing in the facts of this case that would authorize us in holding that "fire-works" were included in the stock insured by appellants.

As well said by Mr. Wood in his work on fire insurance, sec. 58, "It is competent for the insurer to prescribe the terms and conditions upon which he will assume the

risk, and as long as those conditions are not in violation of law or contrary to public policy, they are binding and obligatory upon the assured, and any violation thereof by him releases the insurer from liability, whether the loss resulted from such violation or not. Thus, the insurer may decide what risks are *hazardous, extra hazardous or specially hazardous,* and what are not so; and if they are named and specified in the policy, and prohibited therein, a violation of the condition avoids the policy, even though in fact such articles or use are not hazardous."

The propositions of law announced in the above extract seem to be supported by the great weight of authority; in fact, we are not aware of any respectable authority to the contrary. And besides, they are in harmony with the general principles of law with respect to the capacity of persons to make such contracts as they deem proper.

Mr. May, in his work on insurance, pp. 248 and 249, says: "It is obvious that an insurance upon one class ought not, and in point of law it does not, cover property in goods in another; and the policy may be, and frequently is, so drawn, that if, under a policy insuring specially one class, articles, or modes of use or practices, embraced in another according to the arbitrary classification of the insurers, are introduced, kept, stored or permitted, the policy becomes void; as when the policy expressly provides that any particular class or classes of articles shall not be kept, nor any particular practice or mode of use adopted or carried on, unless specially provided for."

Appellee, to avoid the effect of keeping the fire-works in violation of the terms of the policy, claims that Steele, the local agent of appellant, knew that fire-works were kept by appellee. The only evidence tending to establish this was that of the appellee, and was that Steele knew that appellee had at some previous time kept fire-works

at another store. This would not be sufficient to show that at the time of taking insurance on the stock the agent knew that fire-works were kept and to be kept by appellee, and nothing short of that would work a waiver of the condition prohibiting the keeping of fire-works, except the agreement mentioned in the policy. Peoria Marine Fire Ins. Co. *v.* Hall, 12 Mich., 202.

Passing upon the case as made by the pleadings and evidence, we conclude that the evidence, without any conflict whatever, shows that the appellee did, without the consent of the company, and in violation of the contract of assurance, keep "fire-works," and that the policy was thereby rendered ineffectual; it therefore follows that the verdict of the jury was against the evidence, and this will require a reversal of the judgment.

The general and special exceptions of appellant to the original and amended petition of appellee were correctly overruled. It clearly appears that Steele, the agent who effected the insurance for the company, had authority to do so, and also to countersign and deliver policies; and that he was fully informed, at and before the time the insurance was effected, particularly of the interest of J. M. Tryon in respect to the stock insured. It is made to appear by appellee's petition, that in truth that which appears to be an absolute bill of sale to Tryon of the stock was intended as a mortgage to secure him in a *bona fide* indebtedness, and that Steele was fully informed of the facts at the time the contract of insurance was made; in short, the loss, by the terms of the policy, is made payable to Tryon.

It is claimed that this suit was prematurely brought, for by the terms of the policy the company had sixty days after the proofs were made to determine the matter and pay the loss. While such is the stipulations of the policy, it appears that the state agent had denied the justice of the claim and informed appellee that it would not be paid.

This state agent was also the adjuster of this loss, and by denying the justice of the claim sought to compromise the sum at about one-half of the amount. It would seem that after this denial of the justice of the claim by the state agent and adjuster, that appellee might well treat these acts and declarations of such agent and adjuster as the acts and declarations of the company, and proceed at once with the suit.

As to whether there had been a waiver of the time in which proofs of the loss were required by the policy depended upon the evidence as to the authority of the agent and the acts that is claimed constituted the waiver. This being a mixed question of law and fact should be submitted to the jury upon appropriate instructions. The burden is upon the insured to establish the waiver and the authority of the agent in this particular.

We conclude that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.