## NORTHWESTERN NAT. LIFE INS. CO. v. EVANS. (No. 6099.)

(Court of Civil Appeals of Texas. June 25, 1919.)

1. INSURANCE ☞646(3)—LIFE INSURANCE—DEFAULT IN PAYMENT OF PREMIUM—RECOVERY ON POLICY.

Beneficiary cannot recover on 15-year settlement policy giving insured share in profits upon maturity of 15-year period to be creditable to future premiums, where insurer had defaulted in payment of premium, without proof of the value of policy at time of insured's death, either as to the cash surrender value or as to the amount of profits earned by policy and apportionable to it, or proof of whether such profits, when applied to payment of future premiums, were sufficient to keep insurance in force at date of insured's death.

2. INSURANCE ☞90—LIFE INSURANCE—AUTHORITY OF AGENT—LIMITATIONS IN POLICY.

Provisions of application and policy, limiting agent's authority, are binding upon both insurer and insured.

3. INSURANCE ☞141(4)—CONTRACT—REPRESENTATIONS OF AGENT—APPLICATION—POLICY.

Where application and policy were expressly made the entire contract between insurer and insured, and application provided that insurer was not bound by any statements or representations of the agent, and where insured signed receipt stating that he had examined policy and found it as represented, neither insured nor beneficiary could legally claim that the policy, as issued, was not the contract between the parties.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. INSURANCE ⊙═94—REPRESENTATIONS OF AGENT—ADOPTION.

If insurer issued policy with knowledge that agent had represented that premiums paid on a canceled policy would be credited on the new policy, it would be bound by such representation.

5. INSURANCE ⊙═558(4)—PROOF OF DEATH—WAIVER.

Insurer, by declining to send blanks for making proofs of death, waived compliance with provision of policy, requiring such proofs ·of death.

6. LIMITATION OF ACTIONS ⊙═127(4)—AMENDED PETITION—NEW CAUSE OF ACTION—ACTION ON POLICY.

Amended petition suing on same life policies, for same amount of insurance and upon same risk, as original petition, merely amplifying and stating in different form the same cause of action as alleged in original petition, did not set up new cause of action so as to be barred by limitations.

7. LIMITATION OF ACTIONS ⊙═99(1)—ACCRUAL OF ACTION—REFORMATION OF POLICY.

Where insured upon delivery of policy signed receipt stating he had examined the policy, and found it as represented, the cause of action, ˙if any, for reformation of the policy on ground of fraud accrued at time of delivery of policy, in absence of evidence that he did not examine policy and of some reasonable excuse for his not ɟoing so.

Appeal from District Court, Coryell County; J. H. Arnold, Judge.

Suit by Mrs. Laura Evans against the Northwestern National Life Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

J. R. McClellan, of Gatesville, and S. P. Sadler, of Austin, for appellant.

Mears & Watkins, of Gatesville, for appellee.

BRADY, J. On November 4, 1916, appellee, Mrs. Laura Evans, in the relation of surviving widow of Abe L. Evans, filed˙ this suit against appellant in the district court of Coryell county, Tex., to recover upon an insurance policy set out and described in the petition. issued March 26, 1906, for $1,000, on the life of Abe L. Evans. This policy was No. 77193, and was alleged to have been issued in lieu and in place of policy No. 0–42745, issued on April 18, 1900, by Northwestern Life Association.

On February 16, 1917, appellee filed her first supplemental petition, alleging that, policy No. 77193 having been issued in lieu of policy No. 0–42745, it was therefore ·a transferred risk from Northwestern Life Association, and not a new policy of insurance.

On June 15, 1917, appellee filed her first amended original petition, alleging that in 1906 the Northwestern Life Association was reorganized and reincorporated as Northwestern National Life Insurance Company, and that immediately thereafter its agent, Lewis E. Joy, solicited and obtained an application from Abe L. Evans and wife for a new policy of insurance, which was issued as No. 77193, on March 23, 1906, and that the old policy was surrendered to the company. It was alleged that the exchange of policies was procured through the fraud of the agent, and by reason of misrepresentations, and that Abe L. Evans, during his lifetime, paid premiums on the two policies amounting to 15 years; and praying for a reformation of the last policy issued, so as to contain the same stipulations and contractual relations as contained in the original policy, or, in the alternative, that the last policy be held for naught, and that all credits and payments be applied to the first policy.

On July 19, 1917, appellant filed its first amended original answer, consisting of general demurrer and special exceptions, general denial, and pleading in bar the 2 and 4 years' statutes. of limitation; and by special answer pleaded estoppel, lapse of the policies for nonpayment of premiums, failure to furnish proofs of death, and novation of the contract. General and special exceptions were overruled, and upon trial before a jury a verdict was returned in favor of appellee for $1,000, with interest and attorney's fees, and judgment rendered accordingly.

Findings of Fact. .

On April 18, 1900, appellant, under the name of Northwestern Life Association, issued to Abe L. Evans policy No. 42745 for $1,000, with Mrs. Laura Evans, his wife, as ·beneficiary. On March 23, 1906, appellant issued to Abe L. Evans, in lieu and in place of the first-named policy, its policy No. 77193, in the same amount, after its reorganization and reincorporation as Northwestern National Life Insurance Company. At the time of the exchange of policies, Abe L. Evans had paid six annual premiums on the first policy, and it was agreed by the agent who solicited the exchange that these premiums should be credited upon the new policy.

The last policy contained the recital that it was issued in lieu of policy No. 0–42745, and in consideration of the written application of the insured, a copy of which was attached to and made a part thereof; and the further recital:

"Premiums hereon having been paid in full to the 18th day of April, 1906, at which time this policy may be renewed and continued by the insured herein during the whole life period of insured, by the payment to· the company at its home office of the semiannual premium of $17.21, on or before the 18th day of April and October in every year during the life of the· assured. The nonpayment of any premium when due shall forfeit all premiums paid on this pol-

⊙═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

icy, and terminate the liability of the company hereunder, *excepting as herein expressly provided.*" (Italics ours.)

Policy No. 0–42746 contained a similar provision, and both policies provided for certain benefits after each had been in force 15 full years. The first policy provided for the payment of $1,000 to the beneficiary at the death of the insured within 90 days after acceptance at the home office of satisfactory proofs of death. The policy stipulated that if it should lapse, or become forfeited, it could be reinstated only at the discretion of the directors. It also contained a provision for a grace period of six months, if kept in force for 5 consecutive years, and for a grace period of 1 year after being kept in force for 10 years, with interest upon deferred payments. It was provided in this policy that—

"It is mutually agreed that agents or collectors have no authority to make, alter or discharge any contract in relation to this insurance, or to waive any forfeiture hereof."

It also stipulated for an apportionment of the net payments of premiums to the reserve and mortuary funds. This policy also provided for certain options or benefits after the expiration of 15 years, and that the insured's right to a pro rata share of the reserve fund should mature at such period, and that he might, at any time thereafter, accept one of several options; but it was stipulated that if the insured should not serve written notice of an election of one of the options at least 3 months before the maturity of the policy, the first option should govern. The first option was in terms as follows:

"Continue this policy in force at the ordinary life rate for the age of the insured at original entry, and have the interest and principal of the share of the reserve fund creditable to this policy used to pay future premiums thereon. The unused portion of said reserve fund being paid in addition to the face of the policy in event of death."

The second policy, being No. 77193, contained a similar provision for extended insurance, with the same grace period, and also contained a cash surrender value clause at the end of 15 years, guaranteeing a cash value of $301.56, together with the profits earned by the policy. The policy was a profit-sharing one, and provided that, upon written request of the insured, the profits credited to the policy would be applied and used either as a withdrawal in cash, or in payment of future premiums, or credited to the insured with interest, or might be used as a single premium to purchase additional insurance for the whole term of life, without medical re-examination. The last-named option, however, could be claimed only upon written request made by the insured not less than 1 year prior to the end of the distribution period.

It was also provided in this policy that the policy and the application constituted the entire contract, and that—

"Agents are not authorized to make, alter or discharge this contract, or to waive any forfeiture thereof, or to extend the time of payment, or to grant permits, or to bind the company in any way."

There was a clause requiring written notice and proofs of death.

The application for the second policy, dated March 16, 1906, provided for the surrender of the original policy, and release of appellant from liability thereon. In the application for the exchange of policies, which was expressly made a part of the last policy, it was stipulated as follows:

"It is agreed that the insuring company shall not be responsible for any statements or representations, except such as are made in writing and submitted with this application."

Abe L. Evans died August 25, 1916, and written notice of his death was given to the company. Upon receipt of this advice, the company notified appellee's attorneys that the policy had lapsed for nonpayment of premiums, was no longer in force, and was without value; and the letter stated:

"There is therefore no reason why we should send blanks for making proof of death, as requested."

In deference to the verdict of the jury, we find that Lewis E. Joy, agent for appellant, solicited the exchange of policies, and stated to Mr. and Mrs. Evans that credit would be given on the new policy for the six premiums paid on the old; that the new policy would take the place of the first one, but that it would be the same character of policy, and was to be paid up when carried 15 years. Premiums were paid on the two policies for 15 years, counting the 6 years' premiums paid on the old policy. Mrs. Evans did not learn of the difference in the policies until after her husband's death.

We further find that the policies were received by Abe L. Evans through the mail, and he signed the following receipt for policy No. 77193:

"Received of Northwestern National Life Insurance Company, of Minneapolis, Minn., policy No. 77193, for $1,000.00, which I have examined, and find entirely satisfactory and as represented. This, April 7, 1906."

The following letter accompanied policy No. 77193 in the mails:

"Northwestern National Life Insurance Co. of Minneapolis, Minn.

"March 27, 1906.

"No. 77193.

"Mr. Abe L. Evans, Jonesboro, Texas—Dear Sir: We inclose you herewith policy No. 77193, issued in exchange of your old policy No. 0–42745, as per application given our Mr. L. E. Joy, on March 16th.

"This is an ordinary life 15-year settlement policy for $1000.00, upon which premiums are paid to April 18, 1906, at which time a semiannual premium will be due of $17.21, as per notice inclosed herewith.

"We trust you will find this policy entirely satisfactory, as represented to you, and ask that you sign and return to us the inclosed policy receipt, also the old policy, if the same has not been previously sent.

"Yours very truly,          F. E. Pycott,
          "Manager Policy Department."

The uncontradicted evidence shows that L. E. Joy was employed as special agent of appellant to receive applications for exchange of old policies. The details of this work were taken care of in the department of the secretary or actuary. Joy had the usual authority granted to agents authorized to solicit business for the company, and had no actual authority to make oral representations different from the provisions of the policies issued by the company, or to vary or change the terms of the written application. There was testimony that at the time the application was received by the company, it had no notice that Joy had stated or represented that the premiums paid on the first policy should be credited on the second policy, and that the latter was issued upon the written application for the exchange.

Abe L. Evans was notified by the secretary of the company by letter, dated April 24, 1915, that policy No. 77193 had lapsed for nonpayment of premium, and again by the president in a letter dated May 10, 1915. In the letter it was suggested that an effort be made to reinstate the policy, and that an extension of time for the payment of premiums had been offered, and tendering advice and assistance to enable Mr. Evans to continue the policy. The last premium paid on policy No. 77193 was a semiannual premium of $17.21, received by the company October 19, 1914. The cash surrender value, if any, of neither policy was shown, nor the status of the settlement provided for by the policy on April 18, 1915, when it was claimed the second policy lapsed. However, it was claimed by Mr. Baxter, president of the company, that policy 77193 had no cash surrender value on August 25, 1916, the date of the insured's death, and that Mr. Evans was entitled to no settlement whatever under the policy on April 18, 1915, because it had lapsed.

### Opinion.

There are a number of assignments of error in appellant's brief, all of which have been considered, but it is not deemed necessary to specifically mention or discuss the same. We have concluded that this case should be reversed and remanded, and we will express our views upon the more important questions which are likely to arise upon another trial. The case seems to have been tried upon the theory that appellee was entitled to recover the full amount of the insurance with interest and attorney's fees upon either or both the policies, under the issues submitted to the jury.

It is insisted by appellant that the court should have sustained a general demurrer to the amended petition, because it was shown that the first policy was fully surrendered and canceled and that the second policy lapsed for nonpayment of premiums some 16 months prior to the death of Abe L. Evans. Had the policies been merely ordinary life policies, this contention might have to be sustained, but it appears that both provided for certain benefits and settlements after being in force 15 years. In other words, they were both issued upon the 15-year settlement plan, in addition to being for the whole life of the insured. The amended petition contained the averment:

"That in event policy No. 77193 should be so corrected and credited as to constitute the payment of premiums for fifteen years, then, under the terms and conditions as above alleged, that said policy would have been in full force and effect at the date of the death of the said Abe L. Evans."

[1] Appellee prayed, not only for the recovery of the face of the policies, but for general relief, and we believe that the petition was good as against the general demurrer. However, it was not shown what value the second policy had at the death of Abe L. Evans, either as to the cash surrender value, or as to the amount of profits earned by the policy and apportionable to it; nor whether such profits were sufficient, when applied to the payment of future premiums, to extend and keep in force the insurance to the date of the death of the insured. Therefore the verdict and judgment for the full amount of the policy was not supported by the evidence, and should have been set aside by the trial court.

Under the undisputed evidence, the first policy was surrendered and canceled, and policy No. 77193 issued and accepted in its place. Appellee's recovery, if she be entitled to recover at all, for the reasons hereafter stated, must be upon the second or substituted policy. She would be entitled to recover the full face of the policy only in the event she should prove that the company had agreed to credit upon the second policy the premiums paid on the first, and that, together with the premiums paid on the second policy, the latter had been in full force and effect 15 years prior to the death of the insured; and that the profits creditable to the last policy were sufficient to keep the insurance in force until the death of the insured. This proof was wanting on the trial, and must be supplied before a recovery could be had for the full amount of the policy.

As to the cash surrender value, there was no proof, nor was there any evidence to show

appellee's right to any of the other benefits stipulated for in the policy.

For the guidance of the trial court in the event of another trial, we announce our conclusion that, if appellee should show that the company made a binding agreement to credit upon the second policy the premiums paid upon the first, and payment of a sufficient number of premiums upon the second to mature the benefits provided for under the 15-year settlement plan, she may recover the full face of the policy, provided the profits creditable to it were sufficient to carry the insurance to the date of the death of the insured, and the excess, if any, of such profits not so applied. If she should fail in this proof, she would nevertheless be entitled to a recovery for the other benefits stipulated for at the end of the distribution period, provided she should show that the insured paid, under the contract, sufficient premiums to mature the 15-year settlements.

We have indicated above that we are of the opinion that appellee cannot recover upon the first policy, but must recover, if at all, upon the second, and we will give our reasons for this conclusion.

[2] It is an undisputed fact that policy No. 77193 was issued in lieu of the first policy, which was surrendered and canceled under the application of Abe L. Evans for exchange of policies. It is sought to avoid this result by the claim of fraud, in the procurement of the exchange, on the part of the company's agent. In the findings of fact we have set out the provisions of the last policy and the application signed by Abe L. Evans, which was made a part of the policy. These provisions are clearly limitations upon the agent's authority, and are binding both upon the company and the insured. When the policy was received by the insured, he signed the receipt, stating that he had examined the policy and found it as represented, and, whether he did so or not, no excuse was offered for his failure to examine the policy and to object to its provisions, if it was not in accordance with the contract made with the company through the agent.

[3] Under these facts, we hold that neither the insured nor the beneficiary could legally claim that the policy as issued was not the contract between the parties. The provisions in the application and the policy put the insured upon notice of the limited authority of the agent, and that the policy and the application should constitute the entire contract. By the very terms of the application, the insurance company was not bound by any statements or representations of the agent, except such as were made in writing and submitted with the application. The policy itself contained an equivalent notice to the insured, and there was therefore no room for the doctrine of apparent agency. There was no proof that the company knew of the alleged statements or misrepresentations of the agent that the second policy should contain the same provisions as the old, and where different from the policy as issued such statements or representations were not binding on the company. Therefore the testimony of Mrs. Evans to this effect should not have been admitted.

In the case of Fritzmaurice v. Ins. Co., 84 Tex. 61, 19 S. W. 301, it was held by our Supreme Court that where a policy contained a similar limitation upon the authority of an agent, the notice would have the effect of confining the authority to bind the company to a general agent, or one acting within the scope of his employment. It was also held that where the application in effect affirmed the correctness of the statements contained in the written application, the binding force of the statements therein contained could not be avoided either by evidence that the applicant was in fact unacquainted with the contents of the application, or that they were known to be false by the soliciting agent.

In Ætna Ins. Co. v. Holcomb, 89 Tex. at page 410, 34 S. W. at page 918, Associate Justice Brown said:

"The policy was delivered at the place and to the person named by the plaintiff, and he is bound by its terms whether he read it or not, there being no facts shown which prevented him from doing so. Morrison v. Ins. Co., 69 Tex. 353 [6 S. W. 605, 5 Am. St. Rep. 63]; Goddard v. Ins. Co., 67 Tex. 71 [1 S. W. 906, 60 Am. Rep. 1]; Ins. Co. v. Gober, 50 Ga. 404; Cleaver v. Ins. Co., 71 Mich. 414 [39 N. W. 571, 15 Am. St. Rep. 275]; Bonneville v. Ins. Co., 68 Wis. 298 [32 N. W. 34]; Quinlan v. Ins. Co., 133 N. Y. 356 [31 N. E. 31, 28 Am. St. Rep. 645]; Ins. Co. v. Swank, 102 Pa. St. 17. The fact that the plaintiff did not know the contents of the policy will not relieve him from the binding force of the warranty contained in it. He could have read it if he had desired to do so."

The facts of the instant case, upon the alleged issue of fraud and misrepresentation, seem to fall within the rules announced in the two cases just cited. If upon another trial the evidence should be the same as to the agent's authority and the knowledge of the company, the issue of fraud would not arise.

[4] However, while the agent's authority was thus limited, it does not follow that the company itself could not have agreed and bound itself otherwise than as set forth in the application, and we hold that if in fact the company did issue policy No. 77193, with knowledge of the agent's statements as to the crediting of the premiums paid on the first policy, this would be binding upon it, and such premiums should be taken into account in determining whether the policy lapsed for nonpayment of premiums. We cannot say that appellee may not be able to

show this fact, especially as the policy itself bears intrinsic evidence that this was the intention and understanding upon which it was issued. The policy was dated March 23, 1906, at which time the insured had paid six annual premiums upon the first policy. In a letter from the manager of the policy department, dated March 27, 1906, as well as in the policy itself, the premiums thereon are shown to have been fully paid to April 18, 1906, which was exactly the date to which premiums had been paid on the old. Therefore the policy was in force from its date, but, as we understand the record, no premium had been then paid upon it except the premiums paid under the old policy. This is a circumstance of some force to show a recognition by the company itself that the case was one of transferred risk, and the premiums paid on the first policy were to be and were credited upon the second, which would mature the latter at the end of 9 years from April 18, 1906, as to the 15-year settlement provisions. This is therefore a question of fact to be determined on another trial.

[5] As to the question of the contracts of insurance being barred, because there was no evidence showing that plaintiff had made proofs of death in accordance with the requirements of the contracts, it is sufficient to say that the requirement for proofs of death seems to have been waived by the insurance company, when the company notified appellee's attorneys a few days after his death that the company denied all liability under the policy, because it was claimed that it had lapsed for nonpayment of the semiannual premium due April 18, 1915. In this letter the company in effect declined to send blanks for making proofs of death, as requested by appellee, and substantially waived this provision of the policy. Northwestern Life Ins. Co. v. Freeman, 47 S. W. 1025; Hartford Fire Ins. Co. v. Josey, 6 Tex. Civ. App. 290, 25 S. W. 685; Ga. Home Ins. Co. v. Jacobs, 56 Tex. 366; Penn Mutual Life Ins. Co. v. Maner, 101 Tex. 553, 109 S. W. 1088.

[6] Under our view of the case, it is not thought that the question of limitation will arise or become material upon another trial. If it should, however, we think it proper to say that we have concluded that appellant's position that the amended petition set up a new cause of action is not tenable. The suit was for the same amount of insurance, upon the same risk, as to both policies, and the amended pleadings merely amplified and stated in different form the same cause of action as was alleged in the original and supplemental petition.

[7] It is also proper to further say, upon the question of limitation, that, with the exception of the matter of crediting the previous payments of premiums, appellee's cause of action, if any he had, for reformation of the policy accrued at the time of delivery of the policy to Abe L. Evans, which was in April, 1906, at which time he signed the receipt stating that the policy had been examined, and that it was as represented. Therefore, if the facts of the alleged fraud should be shown, still, in the absence of evidence that he did not examine the policy, and some reasonable excuse for his not doing so, the right of action, if any, on this branch of the case would be barred long before the institution of this suit.

It is contended by appellant that appellee could in no event claim any of the benefits provided at the expiration of the 15-year settlement period, because the uncontradicted evidence showed that the policy had lapsed for nonpayment of premium, and that no written request had ever been made under either policy for settlement under any of the options.

In the findings of fact we have shown that neither policy was purely an ordinary life policy, and in the policy last issued there is no absolute stipulation that the nonpayment of any premium when due should terminate the liability of the company, but the provision relating to this matter contains the language, "excepting as herein expressly provided." This clause, we think, clearly has the effect of creating certain exceptions to a full forfeiture; and, by reference to the terms of the policy, these exceptions are the several options or settlements accruing at the end of the 15-year period, provided the policy has been kept in force for that length of time.

As to the matter of written request as a prerequisite to the right to claim any of such options, no time is fixed by the policy for the making of the written request, except as to the last-named option relating to the purchase of additional insurance, as to which the written request is required to be made by the insured not less than 1 year prior to the end of the distribution period. No such qualification is found as to the other options. The law does not favor forfeitures, and if the insured in fact kept the policy alive for the full 15-year period, and became entitled to any of the other options embraced in the 15-year settlement plan, we think the beneficiary also became entitled to one or the other of such benefits, and upon written request could legally demand the same. This would be true independently of her right to recover the whole amount of the policy, which might have been lost by nonpayment of the premiums after the 15-year period.

We think we have sufficiently indicated our views upon the principal questions presented by this appeal, and which are likely to arise upon another trial, and the cause is reversed and remanded for trial in accordance with the views expressed.

Reversed and remanded.