### FIRST TEXAS PRUDENTIAL INS. CO. v. LONG.

No. 8426.

Court of Civil Appeals of Texas. San Antonio.
April 30, 1930.

Rehearing Denied May 28, 1930.

Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

Horace E. Wilson, of San Antonio, for appellee.

SMITH, J.

On June 20, 1927, the First Texas Prudential Life Insurance Company issued its policy upon the life of Charles Edward Long, in the sum of $2,000, payable to Ella Margrete Long, wife of the assured. Long, the assured, died on June 6, 1928, and, upon the company's refusal to pay the claim upon proper proof of death, the beneficiary brought this suit and recovered the amount of the policy, as well as for the penalty and attorney's fees provided by statute. The insurance company has appealed.

As correctly stated in appellant's brief, the insurance company "pleaded that no obligation rested upon it under the alleged policy, because of material misrepresentations made to it by the assured, Charles Edward Long, in the application dated June 9, 1927, for the policy, to the effect, (1) that he did not have and had never had any diseases of the heart; (2) that no medical examiner or physician had expressed an unfavorable opinion as to his health; and (3) that he was then in good and sound condition of health, and that he had agreed in the application that the policy to be issued upon that application should not take effect until delivered to him while in good health and condition, whereas, in fact, the assured, Charles Edward Long, at the time of making the application, was not in good health and condition, but was suffering from acute endocarditis and marked enlargement of the heart, both diseases of the heart, and that he had been afflicted with such diseases prior to the time of his application, and had been informed of his condition by his family physician prior to that time. The defendant further alleged that the death of Charles Edward Long resulted from and was caused directly by the diseases of the heart from which he was suffering at the time of his application for the issuance of the policy of insurance, and from which he had been suffering prior thereto.

"The case was submitted to a jury, who found, in response to special issues, that the assured was in good health at the time he made his application for insurance; that he was in good health at the time the policy was delivered to him; that no medical examiner or physician had expressed an unfavorable opinion as to his health prior to that time; that he had never had a disease of the heart prior to the time he made his application for insurance. * * *"

The appeal is predicated solely upon the contentions that there was no evidence to support the findings of the jury; that the evidence was not sufficient to sustain said findings; that said findings are contrary to the overwhelming preponderance of the evidence.

The case made appears to have been fully and properly submitted to the jury, whose findings are responsive and sufficient to sustain the judgment, so that there remains nothing to be determined by this court, except the sufficiency of the evidence to support the jury findings.

It is first contended by appellant that under the evidence the case is indisputably one in which the assured represented in his application to appellant for insurance that he was not then and never had been afflicted with any disease of the heart, whereas, in fact, he had been seriously afflicted with such diseases. Appellant makes a very strong case under this contention, which we have concluded to overrule only after some hesitation and indecision.

It appears that the assured resided at Port Arthur at the time he made the application, for some time prior thereto, and for several months thereafter. His occupation was that of a "still fireman" for an oil refining company, which employment called for very heavy work. He was an active member of the refinery baseball club prior to, at the time of, and for several months following the taking out of this insurance. Dr. W. S. Crumpler was his family physician, and as such examined him in March, 1927. He testified that from his examination, and from X-ray pictures made at the time, he diagnosed the case as one of certain serious heart troubles described by him, which in his opinion could not be cured by medical treatment; that he administered digitalis to the patient. Dr. C. S. Woodward, an X-ray specialist, made the picture used by Dr. Crumpler in this diagnosis, and corroborated the latter's findings. These examinations were made and diagnoses arrived at about three months before the assured made application to appellant for the policy here sued on. In this application the assured represented that he did not have and had never had any diseases of the heart, and that the only cause for which he consulted a physician within the next preceding ten years was on February 27, 1927, for treatment of a mild attack of neuritis. The assured died in June, 1928, about a year after the insurance policy was issued to him, of diseases of the heart, apparently similar to those Drs. Crumpler and Woodward testified they discovered in March, 1927. Dr. Woodward testified that he made a "retake" of the assured's heart in January, 1928, which disclosed a serious aggravation or progression of the conditions portrayed in the original picture taken in March, 1927. In the meantime, and up to that time, Long, the assured, had continued in his work and in his athletic activities, but in January, 1928, his condition became such that he quit work and went to Bandera for

rest and a change. His condition did not improve, he was confined to his bed practically all the time, so that "when he died, why the thing that happened to this aneurism is that it ruptured and the result of that rupture was that the chest flattened out and became normal," as stated by his attending physician. It is difficult to avoid the force of all this testimony as showing conclusively that Long's representations in his application for insurance were false, and knowingly false at that time, concerning the prior and then present condition of his health. We conclude, however, that there were other facts and circumstances in evidence which, if true, either directly or indirectly controvert the evidence hereinabove set out, at least to the extent of raising issues of fact for the jury to determine. We will refer at length to that controverting evidence, in deference to appellant's earnest and vigorous presentation of its case.

In response to Long's application he was examined by Dr. Chambers, the regular medical examiner for the insurance company. This examination appears to have been quite thorough, in which Long was subjected to the usual tests to ascertain his true condition of health. As a result of it Dr. Chambers reported to appellant that Long impressed him as "healthy and vigorous," that, as stated in appellee's brief, he had no "physical defects or deformities; no impairment of sight, or hearing, or discharge from ear; no evidence of goiter, enlarged glands, or tumor. The applicant never had syphilis, stricture, or any venereal disease. There is no alteration in the pupilary reaction or in knee jerks. The applicant's weight is 149 pounds, height 6 feet, waist measurement 31 inches, and a 4-inch expansion of the chest. Temperature 98⅗, pulse 74 per minute and is not irregular, or intermittent, the arteries are not thickened or sclerosed, the blood pressure is given; the respiratory murmur is clear and distinct, over every part of both lungs, which are free from every indication of disease. * * * The heart sounds and rhythm are regular and normal and there is no evidence from percussion or auscultation, of hypertrophy or other disease of the heart, and his examination of the heart and lungs was made with a stethoscope against bare skin; the urinalysis showed clear, with no acid or sugar. At the conclusion of his report the medical examiner unqualifiedly recommends C. E. Long as an A–1 insurance risk and states he is satisfied as to the applicant's identity and substantial correctness of all answers."

We quote further from appellee's brief:

"The widow stated that while she and her husband were living at Port Arthur, Texas, he worked at the refinery and went from one job to another; that he was a fireman at the time he took sick January 5, 1928. At the time he took sick it was caused by an aneurism on the right side of his chest. The witness stated that Dr. Crumpler was their family physician; that he attended her. He had occasion to attend her husband one time, which was in March, 1927, and that this was the only occasion when Dr. Crumpler attended her husband up to the time he took sick in January, 1928. At the time in March, 1927, when Dr. Crumpler attended her husband, he had neuritis and Dr. Crumpler prescribed a chloroform liniment. At the time that the application for the insurance was made June 9, 1927, the condition of her husband's health was good. The witness then described the treatment that Dr. Crumpler gave her husband, March, 1927, which was a liniment to rub on his chest and to apply hot towels on his right side and back. The witness was to continue the treatment for a short while. The condition of Mr. Long's health at that time was good and this condition passed away. Mr. Long did not go back to see Dr. Crumpler after that time and from that time until he took sick in 1928, he was not under the care of any doctor. When Mr. Long took sick he was working as a fireman; it is very hard work. The deceased also played on the baseball team of the Gulf Refinery Company and until the time he took sick in January, 1928, her husband had been working steadily. The witness described something of the nature of the heavy work that the deceased had to do, handling heavy wrenches weighing about one hundred fifty pounds and in constrained positions on the stills. The first time her husband was sick was not until the 5th day of January, 1928, and then he went to bed and after that he was just up and down and did not work any more. Dr. Crumpler came to see him and said it was an aneurism. * * *

"That her husband was examined by the physician for the insurance company, Dr. B. F. Chambers, and that he put things over his ears and listened with them, and went over her husband's chest and heart and when he took the things off of his ears he made the remark 'Fine, fine.' That he looked at her husband's body and made him pull his shirt off, and then the doctor examined his chest and body. That was before the policy of insurance was delivered and it was after that examination that the policy was delivered. The only treatment given by Dr. Crumpler to her husband was a liniment to rub on his shoulder and that her husband never did use any medicine internally. He did not give him any as that was the treatment that he prescribed, the liniment. Referring to the pictures said to have been taken March, 1927, this witness testified that she got them last Tuesday from a girl in Dr. Woodward's office and that day was the first time she ever knew that anybody claimed that these pictures had been made and that the only time she heard Dr. Crumpler say that what was

the matter with her husband was when she was being treated herself and that when they went up to Dr. Crumpler's office for her to be treated Dr. Crumpler asked her husband how his neuritis was. That was what Dr. Crumpler said and her husband told him that it was good."

Several physicians, in addition to those named above, testified at length upon the trial, both as experts and as having examined and treated the assured. Without setting out their testimony at length, or undertaking to analyze it, we will state that in our opinion this testimony, taken in connection with the report of Dr. Chambers, and the testimony of Mrs. Long, was sufficient to take the case to the jury upon the issues submitted concerning the truth or falsity of the representations upon which Long obtained the policy now being contested, and that the jury's findings thereon were warranted by that evidence, and may not be set aside by this court.

Appellant also contends that there was no evidence of any demand made by appellee upon appellant for the payment of the policy, as a basis for the verdict and judgment for penalty and attorney's fees. We overrule this contention. Appellee filed and presented proofs of her husband's death at such a time and in such manner as to constitute a demand upon appellant for payment of the policy and to satisfy the requirements of the law in that respect. Appellant well knew the purpose and object of such presentation, and that by her conduct, acts, and words appellee was making demand upon it for payment of the insurance money. Appellant gambled upon its chance of defeating payment of the policy with the evidence at its disposal. It lost. It should pay the penalty prescribed by the law.

The judgment is affirmed.