## NATIONAL MUT. BEN. ASS'N v. AARON.

No. 7658.

Court of Civil Appeals of Texas. Austin.

Dec. 9, 1931.

Rehearing Denied Jan. 6, 1932.

**372**

Ball & Simmons, of Houston, for appellant.

Coleman Gay and Hart, Patterson & Hart, all of Austin, for appellee.

BAUGH, J.

Suit upon a benefit certificate issued by appellant, a mutual assessment corporation, to Georgia Aaron, deceased, in which appellee, her husband, was named beneficiary. Appellant asserted forfeiture of the policy on the ground that the insured had failed to pay assessments within the time provided in the policy. Trial was to the court without a jury, and judgment rendered for the amount of the policy, 12 per cent. penalty, and attorney's fees; hence this appeal.

The first contention made is that, being a mutual benefit association, chartered in 1905, under the General Incorporation Law (Rev. St. 1895, art. 638 et seq., as amended), without capital stock, whose funds were raised by assessment on its members to pay death claims, appellant is not subject to the provisions of article 4736, R. S. 1925, the penalty and attorney's fee statute.

We do not sustain this contention. Article 4736, R. S. 1925, invokes substantially the same penalty as did art. 3071, R. S. 1895, and art. 4746, R. S. 1911. Appellant was incorporated in 1905, apparently under the general incorporation laws, and not under the provisions of title 58, R. S. 1895. While article 3096w, R. S. 1895, did exempt mutual benefit organizations operated on the assessment plan from such penalty, it did so on condition that they make annual statement under oath to the department of insurance of the state giving the information therein specified, and further provided that for failure to do so they would be deemed insurance companies conducted for profit, amenable to the laws governing such companies, including the penalty statute. There is no contention that appellant complied with said article 3096w, necessary to entitle it to such exemption. In 1909 the Legislature undertook a more extensive and comprehensive regulation of insurance companies (Acts of 1909, c. 108, p. 192 et seq.) title 71, R. S. 1911. It then defined a life insurance company as follows: "A life insurance company shall be deemed to be a corporation doing business under any charter involving the payment of money or other thing of value, conditioned on the continuance or cessation of human life, or involving an insurance, guaranty, contract or pledge for the payment of endowments or annuities." Article 4724, R. S. 1911; article 4716, R. S. 1925. The Legislature has also from time to time authorized the formation and operation of various kinds of associations on co-operative plans, but in each instance has, where exemptions of same from the provisions of the general law was contemplated, expressly so provided, and has prescribed the conditions for such exemption. See article 4798, R. S. 1911, relating to mutual assessment accident insurance companies; article 4859, R. S. 1911, relating to fraternal beneficiary associations. Under the revision of 1925, the only exemptions we find in the statute from the penalties prescribed in said article 4736, are mutual assessment accident companies (article 4788, R. S. 1925), fraternal benefit societies (articles 4823 and 4859, R. S. 1925), and local mutual aid associations (Acts 1929, p. 563, c. 274 [Vernon's Ann. Civ. St. arts. 4875a—1 to 4875a—31]). It is to be noted also that the Forty-Second Legislature (Acts Reg. Sess. 1931, c. 48, § 5a [Vernon's Ann. Civ. St. art. 4831a]) imposed a like penalty on fraternal benefit societies for failure within 60 days to pay a claim after demand therefor.

We think that article 4716, R. S. 1925 (same as article 4724, R. S. 1911) was intended to and does include any corporation writing life insurance, whether for a fixed premium or a post mortem assessment plan, not clearly regulated by, nor operated under, other statutes in title 78 expressly governing

same. It is not contended in this case that appellant operates under any of the provisions of title 78, R. S. 1925, governing fraternal benefit, mutual aid, or local relief organizations. On the contrary, the proof shows that appellant has made no reports to the board of insurance commissioners, and, so far as the record shows, is under no regulation whatever. The term "life insurance company," as defined in said article 4716, R. S. 1925, includes any "corporation" writing life insurance throughout the entire state, as appellant was shown to be doing, whether with or without capital stock, and on whatever plan; and, unless the insurer brings itself under some other provision of title 78, granting it immunity therefrom, it is subject to the penalties of the general law. American Ins. Union v. Wylie (Tex. Civ. App.) 23 S.W. (2d) 491. The mere fact that the corporation has no capital stock and writes assessment as needed insurance is not sufficient in itself to do so.

Pledger v. Business Men's Acc. Ass'n (Tex. Com. App.) 228 S. W. 110, Int. Travelers' Ass'n v. Branum, 109 Tex. 543, 212 S. W. 630, and Schumann v. Brownwood Mut. Life Ins. Ass'n (Tex. Com. App.) 286 S. W. 200, cited by appellant, hold that article 4746 does not apply to the mutual benefit associations involved in those cases. In each of those cases, however, the insurer was organized or was operating under some statute clearly exempting it from the provisions of chapter 2 of title 78. No such case is here presented. Appellant failed to bring itself under any of the statutes applicable to those cases.

▌▌ Appellant's second proposition denies that any statutory demand was made of appellant, a prerequisite to recovery of the penalty. Demand of some sort for payment of such insurance before the statutory penalty can be invoked was of course necessary. A special Supreme Court in Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S. W. 406, held that mere forwarding proofs of death did not constitute a statutory demand. In First Tex. Prudential Ins. Co. v. Long (Tex. Civ. App.) 28 S.W.(2d) 220 (writ refused), however, it was held that, where the beneficiary presented such proofs in such manner as to notify the company that she was making demand for payment, the requirements of the statute had been met. In the instant case the appellee went in person to the offices of the appellant, notified the president of the corporation of his wife's death and asked for instructions. He was given blanks for proofs of death, returned to Austin, executed and forwarded same to the company about July 20, 1930. The record does not disclose the contents of appellee's letter of transmittal; but there was introduced in evidence a letter from appellant to appellee, dated July 25, 1930, the caption of which read, "Re: Claim of Mrs. Georgia Aaron, Deceased," acknowl-

edging receipt of proofs of death of Mrs. Aaron, but denying liability. While the statute in question is highly penal and must be strictly construed, we think the foregoing was sufficient to sustain a finding of the trial court that the company recognized the conduct of appellee, the proofs of death, and correspondence with it, as a demand for payment, or even that its letter of July 25th admitted a written claim for payment of such insurance. The form of the demand is not material. The essential thing is that the company be advised that the insured is dead and that the beneficiary is asserting a right against it under the policy. Penn. Mutual Life Ins. Co. v. Maner, 101 Tex. 553, 109 S. W. 1084. And it has been held in Standard Acc. Ins. Co. v. Bittle (C. C. A.) 36 F.(2d) 152, that demand may be inferred from a denial of liability on the part of the company. The record in this case shows such denial of liability by appellant and refusal to pay said policy after receipt of the proofs of loss.

▌▌ The next contention made by appellant is that appellee was entitled to recover at most only $1,000 under the policy issued. The deceased applied for a $2,500 policy. The company, being then out of printed forms for a $2,500 policy, used a printed form for a $5,000 policy, to which it attached the following indorsements:

#### "Indorsement No. 1.

"The benefits under this policy are reduced 50% and the assessments are reduced from $5.50 to $3.00 each. By reason of age the benefits are still reduced as outlined in indorsement No. 2.

#### "Indorsement.

"By reason of age requirement the association and the insured agree that should death occur within the first year 30% of the benefits of the policy shall be paid subject to the policy, should death occur within the second year 40% of the benefits of the policy shall be paid subject to the conditions of the policy and 50% thereafter shall be paid subject to the conditions of the policy, dated this 10th day of April, 1929, at Houston, Texas."

Mrs. Aaron died within the second year after issuance of the policy. She applied for, and paid, nineteen assessments on a $2,500 policy. Without extended discussion of the terms of the indorsements, which must be strictly construed against the company, it is obvious that the 30 per cent. and 40 per cent. reductions named, like the 50 per cent., were intended to apply and did apply to the amount named in the face of the policy; that is, to the $5,000. To construe indorsement No. 2 otherwise would be unreasonable and limit her insurance, even after the expiration of the two-year period, to a maximum of $1,250, when the uncontroverted evidence shows that a $2,500 policy was intended.

■■ The fourth proposition asserts error in rendering judgment for a specific sum, contending that the trial court should have directed the officers of appellant to levy an assessment on the members of the group in deceased's class, and to pay over the proceeds of such assessment, not to exceed the face of the policy, to the beneficiary. This proposition is not sustained. The company was liable for the face of the policy, unless it pleaded and proved facts under the provisions of the policy limiting its liability to a less amount; and the burden was upon it to do so. Ft. Worth Mutual Ben. Ass'n v. Golden (Tex. Civ. App.) 287 S. W. 291; Fort Worth Mut. Benev. Ass'n v. Haney (Tex. Civ. App.) 17 S. W.(2d) 104, 105; Stone v. Brady Mutual Life Ins. Ass'n (Tex. Civ. App.) 2 S.W.(2d) 538.

Appellant next complains of the action of the trial court in permitting the appellee to file a first-amended supplemental petition in said cause on January 16, 1931. The trial was had before the court without a jury on November 24, 1930, and the case then taken under consideration by the court along with all demurrers and exceptions of both parties. On the day the trial began, the appellee filed a first supplemental petition in response to appellant's defense of forfeiture, in which appellee alleged an agreement made with appellant at the time their applications were signed that, instead of sending separate assessments for $3 each to appellee and his wife, who held coeval policies, a joint assessment of $6 covering both policies would be sent to appellee. To this allegation the appellant's counsel made an oral objection at the time on the ground that said pleading did not indicate whether such agreement was oral or written, when made, nor how. This objection, along with all the pleadings and evidence, was taken under consideration by the court. On January 16, 1931, the court sustained said objection and so notified counsel for appellee. The proof relative to such agreement, however, was already before the court. Thereupon, on January 26, 1931, while said case was still pending, the trial court permitted the filing of amendment complained of. No new matter was set up, and the amendment merely conformed to the proof already admitted under the pleadings on file when the trial was had. Supplemental answer was then filed by appellant on February 3d, alleging surprise and lack of opportunity to controvert the matters alleged in said amended supplemental petition, and moved the court to strike same from the record. This motion was overruled, and judgment rendered for appellee on that date.

■■ The pleadings on file before the trial began contained substantially the same allegations as those subsequently made. The appellant, in face of these pleadings, did not urge any surprise, seek a continuance, nor ask that its objections be acted upon before proceeding with the trial. On the contrary, the appellant proceeded to trial and agreed that all objections to such pleadings be taken under advisement by the court. This course we think reserved to either party the right to file trial amendments, within the discretion of the trial court, which might be necessary to conform to the issues as made by the pleadings and the proof. Where the discretion of the trial court is not abused, he may permit the filing of a trial amendment after the testimony has been closed. Continental Paper Bag Co. v. Bosworth (Tex. Com. App.) 269 S. W. 83, 85. This in effect was what occurred in the present case. It is a common practice in trials to the court without a jury for the court to hear all the evidence and take same together with the demurrers to the pleadings under consideration before judgment. Of course, either party can demand a ruling of the court before trial on exceptions when pending, and might be entitled to a continuance after the court's action thereon. But, where he does not do so, and consents that the court proceed as in this case, matters of subsequent amendments, whether denominated trial amendments or supplemental amendments, are left largely to the discretion of the trial court. And, unless there is an abuse of that discretion to the prejudice of the rights of a litigant, the appellate court will not reverse the case because of some irregularity in the method of procedure. Ellerd v. Burkhalter (Tex. Civ. App.) 269 S. W. 197. Trial amendments have been permitted in order to make the pleadings conform to the proof and the issues joined, even after the verdict of the jury had been returned. Johnson v. Bingham (Tex. Civ. App.) 251 S. W. 529; Rea v. Johnson (Tex. Civ. App.) 270 S. W. 1077, 1078.

■■ Nor was it error to admit the testimony of appellee as to his oral agreement with appellant's agent that, instead of sending separate assessments to him and to his wife, a joint assessment for both would be sent to appellee only. We do not deem such agreement an attempt to vary the terms of the policy as to payment of assessments. It was rather a contemporaneous oral agreement incidental to, but not a part of, the written contract, which appears to have been accepted by and acted upon by appellant in collecting the assessments. And, had the authority to make such agreement not been vested in the agent, there was evidence indicating that appellant had in fact mailed notices of assessments on both policies to the appellee only, and that appellee had individually paid in one check all assessments made under both policies. From this the trial court could properly infer ratification by the appellant of the act of its agent, even if originally unauthorized, by itself carrying out such agreement. Northwestern Nat. Life Ins. Co. v. Evans (Tex. Civ. App.) 214 S. W. 598, 599; U. S. Fidelity & Guaranty Co. v. Taylor (Tex. Civ. App.) 11 S. W.(2d) 340 (writ refused).

The remaining question relates to the issue of forfeiture. The policy contained the usual provision that it should forfeit in the event the insured failed within 10 days after notice to pay any assessment. The facts are that on June 4, 1930, appellant mailed appellee notice of assessment for $8.50, $5.50 on his own policy and $3.00 on that of his wife, which was excessive, such assessment amounting only to $6.00 on both policies. Appellee immediately returned said notice to appellant, with the notation thereon: "Isn't this a joint policy and shouldn't the assessment be $3.00?" On June 6, 1930, appellant wrote appellee admitting the error in the notice of assessment, advising that it should be $3 on each policy, and closed its letter as follows: "Trusting this straightens the matter out satisfactorily and we shall have your check in the amount of $6.00 to cover this expense fund assessment on your and Mrs. Aaron's policies at your earliest convenience." This letter, however, was addressed to appellee at Fort Worth, Tex., instead of Austin, where he resided, and was never received by him. The record also shows payment by appellee on June 10, 1930, of a $6 death assessment on said policies, obviously made subsequent to that of June 4th. On July 1, 1930, appellant made another assessment of $6 on said policies for the death of W. S. Winters, Jr. Appellee paid this by check dated July 7th, on which was marked "(W. S. Winters, Jr.)," which was cashed by appellant. On July 15th, two days after the death of Mrs. Aaron, appellant wrote appellee acknowledging receipt of his check to pay the W. S. Winter death assessment, stating that it had applied said check to the payment of the older assessment, i. e. of June 4, and requesting appellee to send another check for $6 to cover this back assessment. This appellee did on July 17, which appellant then declined to accept, on the grounds that Mrs. Aaron had died and that both policies had lapsed.

It is not clear whether appellant knew at the time the letter of July 15th was written, requesting further payment by appellee, that Mrs. Aaron had died on the 13th, but we assume that it did not. In the absence of such knowledge, the company could not be held to have waived a forfeiture by that letter alone [Milam County Mutual Life & Acc. Ass'n v. Watson (Tex. Civ. App.) 29 S.W.(2d) 813], but its conduct prior to the death of Mrs. Aaron, in accepting the assessment of June 10th, and of July 7th when said policies were already in arrears, when it had the right to declare a forfeiture, combined with its letter to appellee of July 15, 1930, were clearly sufficient we think to manifest an intention on its part not to forfeit said policies, but to continue same in force. In view of the established rules that the law abhors a forfeiture, and will seize upon slight circumstances as evidence of an intention to forego such forfeiture, we think there was ample evidence in this case to sustain a finding of waiver. Equitable Life Assurance Society v. Ellis, 105 Tex. 536, 147 S. W. 1152, 152 S. W. 625; Calhoun v. The Maccabees (Tex. Com. App.) 241 S. W. 101; Bailey v. W. O. W., 116 Tex. 160, 286 S. W. 456, 288 S. W. 115, 47 A. L. R. 876; Stone v. Brady Mutual Life Ins. Ass'n (Tex. Civ. App.) 2 S.W.(2d) 538.

Finding no error in the record, the judgment of the trial court will be affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant earnestly insists that, because it was exempt from the penalty statute in 1905 when incorporated, it continued to be exempt, unless subsequent legislation, strictly construed, applied to such company, and that the penalty statute (article 4736, R. S. 1925) was not clearly intended to apply to it, but was a part of the act of 1909 applicable only to the kinds of insurance companies designated and regulated by that act. We do not sustain this contention. Regardless of how general the original act of 1909 (chapter 108) may have been in its application, articles 4716 and 4736, being sections of the 1909 act, have twice been re-enacted by the Legislature as Revised Statutes of 1911 and 1925, in general terms and of general application to the writing of life insurance in this state. This purpose is clearly indicated in the language of article 4716, R. S. 1925, that, "When consistent with the context and not *obviously used in a different sense*, the term 'company,' or 'insurance company,' as used herein, includes *all corporations* engaged as principals in the business of life, accident or health insurance." (Italics ours.)

This language is general in terms, and was intended, we think, as was that of article 4736, to apply to, and does apply to, every kind and character of life insurance corporation doing business in this state, regardless of when and how incorporated, unless such insurance company brings itself within some other provision of the Revised Statutes exempting it from these provisions. This appellant did not undertake to do. Motion overruled.

Overruled.