## JOHNSON et al. v. BINGHAM. (No. 8271.)

(Court of Civil Appeals of Texas. Galveston. Feb. 22, 1923. Rehearing Denied May 3, 1923.)

**1. Mortgages ⬤497(2) — Foreclosure judgment held conclusive in trespass to try title.**

A judgment in a mortgage foreclosure proceeding was conclusive as between the parties and those holding under them in a subsequent suit in trespass to try title, where right to recovery in both proceedings depended upon whether a certain person was an innocent holder of notes and mortgages.

**2. Judgment ⬤675(1)—Attorney and next friend held concluded by judgment as to land title.**

An attorney for a minor and his next friend were both concluded by a judgment respecting title to land, the same as though parties to the action.

**3. Estoppel ⬤68(3)—Mother as next friend, asserting fee-simple title in child, estopped to assert interest in self in subsequent proceeding.**

Where a mother sued as next friend of her minor son, to recover land conveyed to the son by the father by absolute deed, she was estopped in a later proceeding against persons claiming under a foreclosure against the legal title so established from asserting that the deed, though absolute in form, was in trust, for the minor himself and for herself and the other heirs, or from asserting any interest in the property arising out of a claim that she had paid part of the purchase price thereof under an agreement with the son's father that she was to own one-half of it.

**4. Estoppel ⬤70(1)—Attorney, having interest in property in suit, but not asserting it, estopped in subsequent suit.**

Where an attorney represented a minor and asserted entire legal title to be in the minor under a deed, while at the time the attorney had an unrecorded conveyance for a half interest in the land as compensation for his services, he was estopped in a second suit involving the title to the land to assert his interest by reason of such unrecorded conveyance.

**5. Trusts ⬤29—Facts held not to engraft a parol trust in land.**

Where a white man, living in illicit relationship with a negro woman, by whom he had several children, on delivering a deed to his minor son, on being asked as to why he put it all in the boy's name, and not put the girl's name therein, replied, in substance, that it was because a girl, when she gets grown up, might marry some fellow and would want to separate her part and take it away, and that she might marry a gambler, while a boy, when he grew up, would bring things in, and not carry anything out, but that he intended it for all of them, both the mother and the children already born, as well as those thereafter, such language was too indefinite and unsatisfactory to create a trust, and should be regarded as precatory.

**6. Trusts ⬤44(3) — Clear and explicit evidence necessary to establish.**

In order to ingraft a parol trust on an absolute unconditional deed, the evidence must be clear, satisfactory, and explicit.

**7. Mortgages ⬤587 — Purchaser at foreclosure protected.**

Foreclosure of mortgages by innocent holder of notes and mortgages executed by one having the legal title foreclosed any title that third parties may have had in the property, and the title of the purchaser at the sale was free from all such claim.

**8. Mortgages ⬤186(3)—Burden upon equitable owner to show mortgagee had notice.**

The burden was upon one having an interest in land to show that those who took mortgages from the record legal owner had notice of his equities.

**9. Vendor and purchaser ⬤232(1)—Presence on land held not notice of equities.**

Where holder of a record title lived upon land, the presence upon such land of others who were apparently servants or tenants was not such possession of the property as would charge a purchaser from the record owner with notice of any equities they had in the land.

**10. Judgment ⬤240—Plaintiff held entitled to joint and several judgment for rents against parties in joint possession.**

Plaintiff in trespass to try title had the right to joint and several judgment against defendants for rents found by the jury, where the defendants were in joint possession claiming undivided interest in the land, though as between themselves they may have been entitled to have the rents due plaintiff apportioned, being joint trespassers as to plaintiff.

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. Pleading ⬡⟶245(6)—Amendment after verdict in accordance with evidence held proper.**

Where petition in trespass to try title alleged rental value as $10 per annum, court properly permitted the words "per acre" to be inserted after verdict, where all of the evidence offered by the parties fixed the rental value at so much per acre, and it was perfectly clear that, if the amendment had been made before the trial, it would not have affected the verdict, the provision of the statute requiring all amendments to be filed "before parties announce ready for trial, and not thereafter," being merely directory.

Appeal from District Court, Brazoria County; M. S. Munson, Judge.

Action by George H. Bingham against B. L. Johnson, Jr., and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Warren & Conn, of Houston, and Lewis H. Follett, of Angleton, for appellants.

A. R. Rucks, of Angleton, and Elliott Cage and Cole & Cole, all of Houston, for appellee.

PLEASANTS, C. J. This is an action of trespass to try title brought by appellee against appellants, B. L. Johnson, Jr., Amanda Whitfield, Marie Johnson, Budd Land, Johnnie Johnson, Frederick Douglass Johnson, and John B. Warren.

The land in controversy consists of two tracts of 73 and 29.5 acres, respectively, being parts of a tract of 325 acres on the A. Robinson league in Brazoria county.

The answers of defendants allege in substance:

"That the land in controversy was the property of Amanda Whitfield and her children under a deed in trust therefor made by F. E. Pye to B. L. Johnson, deceased; that B. L. Johnson, deceased, made a parol gift thereof upon its acquisition to the said Amanda Whitfield and her children by him; that Amanda Whitfield, relying upon said trust and parol gift, entered into possession of said tract of land and made permanent and valuable improvements thereon from the time of its acquisition in 1907 and 1908 until the present time. They further alleged that B. L. Johnson, deceased, in his lifetime always recognized and acquiesced in the claim of Amanda Whitfield to the ownership of said land for herself and her said children, and in recognition of said ownership on December 4, 1908, executed and delivered a deed thereto to B. L. Johnson, Jr., his minor son, seven or eight years old, declaring at the time of the delivery of said deed that it was his purpose and intention that it should be held and owned by the said Amanda Whitfield and her children by him, and that he was putting the title to said property in the name of said minor son for the use and benefit of all of them. The appellants further alleged that the said Amanda Whitfield had been in peaceable and adverse possession of said tract of land from the time of the deed thereto from F. E. Pye to B. L. Johnson, deceased, claiming to own the same for herself one-half, and for her minor children one-half, and had been in adverse possession for more than 10 years prior to the institution of this suit, and that

plaintiff's cause of action, if any, was forever barred by the statute of limitation of 10 years. The defendant John B. Warren specially pleaded the said 10-year statute of limitation, and also set out in his pleadings that on June 26, 1913, his codefendants Amanda Whitfield and B. L. Johnson, Jr., had executed and delivered a deed to the firm of Warren & Simmons, composed of himself and D. E. Simmons, for an undivided one-half of said tract of land; that thereafter the said firm of Warren & Simmons was dissolved, and the said D. E. Simmons conveyed to him John B. Warren all of his interest in said tract of land, which deeds were duly recorded, and he was entitled to an undivided one-half interest in and to said tract of land as against the plaintiff.

"The defendants pleaded that Amanda Whitfield, now Amanda Whitfield Laurie, and B. L. Johnson, deceased, worked together as farmers for more than 16 years prior to his death on February 6, 1912, under an agreement, express and implied, that the results and proceeds of their labor and the property that they accumulated by their common and individual efforts and their respective accumulations of property should be the joint property of both; that they joined their efforts and services and common and individual earnings for their mutual benefit and in pursuance of a common purpose of accumulating property for their old age and for the purpose of acquiring a home for themselves and children. Such association began when the defendant Amanda Whitfield (now Laurie) was about 15 years of age, and she and the said B. L. Johnson, deceased, made their home at that time on what was commonly called Julia Lang's place, and thereafter they moved to a place that was commonly called the Thurmond place, fronting on Oyster creek, and the said Amanda Whitfield and B. L. Johnson, deceased, lived on said tract of land, the said Amanda Whitfield raising her own crops thereon each and every year until the year 1907. The said Amanda Whitfield cooked and washed for the said B. L. Johnson, deceased, took care of him during his sickness, and in all respects served him as a wife. The said Johnson appropriated the services of the said Amanda Whitfield and her individual earnings as if they were his own property and with the intention, express and implied, that whatever property so acquired by their joint and individual efforts should be the joint property of both.

"Defendants further alleged that some time prior to the date of the deed from F. E. Pye to the 73-acre tract of land in controversy F. E. Pye told the said Johnson and Amanda Whitfield that he desired to purchase the Thurmond place of 325 acres for the purpose of speculation and for the purpose of reselling the same at a profit; that, if they would assist him in the matter of purchasing said land and reselling the same, he would deed to them a home on said tract of land; that the said Johnson, deceased, and Amanda Whitfield, in order to obtain a home on said tract of land, assisted Pye in the purchase and resale of the said land, the said Johnson agreeing with the said Amanda Whitfield that, if she would use her influence with certain colored people in selling out said land or a portion thereof and would assist him in improving the same when obtained, said property should be and would be the property of herself and children by him and should be their home.

"The defendants alleged that the said Johnson and Amanda Whitfield jointly performed the consideration for the 73-acre tract of land; that the said Amanda Whitfield at least contributed one-half of the consideration that inured to F. E. Pye for the said 73-acre tract of land, and the said B. L. Johnson, deceased, took the title thereto in his own name charged with a trust in favor of said Amanda Whitfield and her children by him for the whole of said tract of land; that the said Johnson, deceased, after obtaining said deed, always recognized and acquiesced in the claim of the said Amanda Whitfield to the ownership of said land for herself and children; that all of the improvements made upon said land thereafter were paid for out of the proceeds of the crops of the said Amanda Whitfield and her children, under the agreement aforesaid made before the execution of the deed to the 73-acre tract of land that said property should be the property of Amanda Whitfield and her children by him and same to be held and owned by them, one-half by the said Amanda Whitfield and one-half by the said children. They further alleged that the said Amanda Whitfield went in possession of said land at the time of its acquisition, and at all times since has been in possession thereof; claiming to own the same one-half for herself and one-half for her children; that the said Johnson appropriated her services and money and crops for the purpose of buying and acquiring said land, and that her money, services, and property contributed at least one-half of the purchase price of said property; that she went in possession in the spring of 1907, and fenced and improved the said land under said agreement, express and implied, that the said land was hers and that of all her children by the said B. L. Johnson, deceased; that the said Amanda Whitfield and B. L. Johnson shortly after its purchase, and out of money of the said Amanda Whitfield, built a house on said land, fenced it off from the balance of the tract, and built and erected a gin thereon, and the said Amanda Whitfield and children moved into said house, and have lived there continuously since that time; that at all times since its acquisition they claimed to own the whole of said tract of land; that a short time after the purchase of the 73-acre tract the said Johnson and Amanda Whitfield agreed that they would buy the 29-acre tract, a part of the land in controversy, and that they would enlarge their fence so that it would include the same and the same should be owned in the same proportion as the 73-acre tract and should be held by the said B. L. Johnson for Amanda Whitfield and her children by him; that the said Johnson, in pursuance of said agreement, purchased said tract of land from F. E. Pye with the moneys derived from the crops of said Amanda Whitfield; that after said purchase Amanda Whitfield was in possession of said 29 acres, claiming to own the same since the date of said deed to the present time; that the said Johnson, realizing that he was getting old, and that his health was poor, and desiring to keep faith with the said Amanda Whitfield, and under a sense of obligation to her and her children by reason of having appropriated her labor, earnings, and services for years, and by reason of his love for her and their children, and in recognition of the ownership of said land in Amanda Whitfield and her children, and with the purpose and intent of divesting out of himself all title to said land and putting the same in trust for Amanda Whitfield and their children, did execute a deed thereto on December 8, 1908, wherein he named B. L. Johnson, Jr., his minor son, as grantee, and immediately delivered the same, declaring he was deeding this land and all interest therein to Amanda Whitfield and her children; that at the time of the delivery of said deed the said Johnson intended, and so declared, that he was putting the title of said land in the name of B. L. Johnson, Jr.,' in trust for the said Amanda Whitfield one-half and their children one-half; that at the time of the execution and delivery of the said deed there was only Johnnie Johnson, B. L. Johnson, Jr., and Marie Johnson; that after the execution of said deed the said Johnson never had any interest in said land; that the said Amanda Whitfield was then in possession of said land, claiming the same for herself and children, and thereafter remained in possession until the present time, cultivating and enjoying the same and claiming and holding possession of the whole of said land for herself one-half and her children by B. L. Johnson, deceased, one-half; that at the time of the death of B. L. Johnson she was with her fourth child by him, and the defendants believed and alleged that said Johnson intended his deed to be in trust for said Amanda Whitfield and all of her children then living and those thereafter born; that the said defendants had been in peaceable and adverse possession of all of the land in controversy, cultivating, using, and enjoying the same, for more than 10 years prior to the filing of this suit; that the said Amanda Whitfield was in possession and claiming to own the same from the time of its acquisition until June, 1913, at which time she conveyed to her codefendant John B. Warren or to his grantors an undivided one-half of said land, and from the date of said deed she had been in peaceable and adverse possession of the whole of said land, holding and claiming same for herself and children and the said grantee John B. Warren; that plaintiff was forever barred by the 10 years statute of limitation.

"The defendants further alleged that at the time B. L. Johnson, deceased, attempted to place liens on said land he had no interest therein, and the said Amanda Whitfield was in possession thereof in person and by tenants, and the said B. L. Johnson, deceased, was not in possession thereof, and by reason of the possession of said Amanda Whitfield the plaintiff and those under whom he holds and claims were put on inquiry, and, if said inquiry had been pursued with reasonable diligence, they could and would have learned of the rights of the said Amanda Whitfield and her children.

"The defendants further alleged, if the plaintiff had any interest in said land which was not admitted, but expressly denied, it was only the interest of B. L. Johnson, Jr., arising by reason of the fact that B. L. Johnson, Jr., was the only party defendant to the cross-bill of H. Masterson in that certain suit styled B. L. Johnson, Jr., Suing by Next Friend, Amanda Whitfield, v. H. Masterson et al., No. 10662; that the said land was susceptible of a partition in kind; that the said Bingham owned the tract of land adjoining the land in controversy on the north, and his interest, if any, could be set aside equitably out of that portion of the land in controversy adjoining that of the said Bingham, and the defendants prayed that, in the event it should be decided that the said plaintiff had the interest of the said B. L. John

son, Jr., in said land, commissioners be appointed for the purpose of setting the same aside to him along the north line of the land in controversy."

Plaintiff by supplemental petition denied generally and specially each and all of the material allegations of defendants' answer, and alleged, in substance, that the legal title to the property was in B. L. Johnson, to whom it was conveyed by F. E. Pye, and that, if defendant Amanda Whitfield paid any of the consideration for said land, or if the said B. L. Johnson conveyed the land to B. L. Johnson, Jr., for the use and benefit of said Amanda Whitfield and her children by the said B. L. Johnson, the right and interest of said defendants in the land were purely equitable and were secret equities of which H. Masterson, the vendor of plaintiff, had no notice at the time he acquired the liens on the land created by R. L. Johnson through foreclosure of which he acquired the title which plaintiff now holds; that, the legal title to the land being in B. L. Johnson, if the said Amanda lived upon the premises, she was there as the tenant or adulterous companion of B. L. Johnson, and her possession and that of her illegitimate children by B. L. Johnson was in subordination to the title and possession of B. L. Johnson, or must be regarded as so attributable, and such possession could give no notice of her or her children's claim or equities in the land.

"Plaintiff further alleged that in a certain suit filed in the court below by B. L. Johnson, Jr., suing by Amanda Whitfield, as next friend, against H. Masterson et al., said suit No. 10662, the said H. Masterson having become the holder of the notes and mortgages executed by B. L. Johnson, Sr., filed a cross-action setting out that he was the holder of said notes and securities, and asked in the said cross-action in the alternative that, if the said B. L. Johnson, Jr., be held to be the legal owner of the land in controversy, then that all of the said notes and deeds of trust be established as valid and existing obligations against said land, and that his said mortgage lien be foreclosed; that judgment was rendered in the trial court in favor of the defendant, decreeing the title to said land to be in plaintiff herein, George Bingham, who was one of the defendants in said suit; that the plaintiff in said suit, B. L. Johnson, Jr., appealed said case to the Court of Civil Appeals of the First Supreme Judicial District of Texas at Galveston, and there it was adjudged that the title to said land was in B. L. Johnson, Jr.; that the said court established and foreclosed a lien on said land in favor of the said H. Masterson; that afterwards the land in controversy was sold out under said judgment as under execution on the first Tuesday in August, 1917, to H. Masterson, who thereafter sold and conveyed the same to the plaintiff herein, and by virtue of the foregoing proceedings the plaintiff was the owner of said land, and that by virtue of the said foreclosure proceedings all secret equities or rights as pleaded by the defendants herein were cut off and foreclosed. The plaintiff further pleaded the said proceedings in said cause No. 10662 as res adjudicata against the rights of the said B.

L. Johnson, Jr., and as a complete estoppel of any of the rights asserted herein by the said B. L. Johnson, Jr.; that the said Amanda Whitfield always took the position that the property belonged to B. L. Johnson, Jr., for the purpose of misleading the plaintiff and those under whom he claimed, and the statements and position taken by the said Amanda Whitfield were pleaded as an estoppel against her as well as against those claiming with her herein; that the said Amanda Whitfield was estopped from asserting any secret right or trust in said deed from B. L. Johnson to B. L. Johnson, Jr., she having heretofore asserted in former litigation that all of the estate, legal and equitable, passed by said conveyance to B. L. Johnson, Jr.; that, having failed to assert her claims and those of her children in said litigation, they were now estopped, and, if she had disclosed such claims in said former litigation, they would have been made parties, but, having caused the said H. Masterson to believe they had no interest, and said notes now being barred, she is estopped to assert such interest now."

The trial in the court below with a jury resulted in a verdict and judgment in favor of the plaintiff against all of the defendants for the land in controversy. Plaintiff also recovered a judgment against the defendants and the United States Fidelity & Guaranty Company, as surety on a replevy bond executed by defendants, for the sum of $1,588.75, the rental value of the land as found by the jury for the years 1919, 1920, and 1921.

The court instructed the jury to return a verdict in favor of the plaintiff for the land, and the only issue submitted to the jury was the rental value of the land for the years above stated.

The evidence shows that the 73-acre tract of land was conveyed to B. L. Johnson by F. E. Pye by general warranty deed on May 29, 1907. On March 16, 1908, F. E. Pye by warranty deed conveyed to B. L. Johnson the 29½-acre tract. After acquiring the title to the land by these deeds, B. L. Johnson executed the following instruments affecting the title to said land:

A mortgage dated December 7, 1908, to secure Miss Hattie Fain in a $1,200 note, which was filed for record on December 9, 1908.

On December 8, 1908, he executed a general warranty deed to B. L. Johnson, Jr., for a recited consideration of $1 and love and affection, which was not recorded until February 9, 1912, after old man Johnson's death.

On March 20, 1909, he executed a mortgage to secure S. S. Z. Thompson in a note of that date in the sum of $300, which mortgage was promptly recorded on March 24, 1909.

On March 28, 1910, he executed a mortgage to secure a note to S. S. Z. Thompson in the sum of $200, and the mortgage was promptly recorded on April 1, 1910.

On May 10, 1911, he executed a mortgage to secure S. S. Z. Thompson in the payment of a note for $300.00, which mortgage was recorded on July 26, 1911.

On January 3, 1912, he executed a mort-

gage to secure Dave A. Wies in the payment of a note for $4,000, which mortgage was recorded January 27, 1912.

B. L. Johnson, Sr., died on February 6, 1912. Subsequent to his death administration proceedings were had on his estate, A. E. Masterson being appointed administrator; and all of the above notes, together with the mortgage liens securing the same, having been purchased for a valuable consideration by H. Masterson, he filed his claim in the probate court of Brazoria county, Tex., and the land was sold under the orders of that court for the payment thereof by A. E. Masterson, administrator, to Bassett Blakely, who in turn, on January 30, 1913, conveyed to plaintiff, George H. Bingham, for $6,000, and in the general warranty in which deed H. Masterson joined.

Amanda Whitfield appeared in the probate court before the land was sold and claimed the same to be the property of her son B. L. Johnson, Jr., under the deed from B. L. Johnson, Sr., above referred to. Subsequent to selling the land at administrator's sale, Amanda Whitfield instituted suit on June 24, 1913, in the district court of Brazoria county, Tex., in case No. 10662, B. L. Johnson, Jr., by His Next Friend, Amanda Whitfield, v. H. Masterson, Bassett Blakely, A. E. Masterson, Individually and as Administrator of the Estate of B. L. Johnson, Deceased, and George A. Bingham, and in the suit claimed the property to be owned by her son B. L. Johnson, Jr., under the deed to him from B. L. Johnson, Sr., and in which she asserted that B. L. Johnson, Sr., during his lifetime, "was the owner of said land in fee simple," and that he conveyed the land to B. L. Johnson, Jr., and that since B. L. Johnson, Sr.'s death she had rented the land as the mother of B. L. Johnson, Jr., "for his use and benefit." In the suit she was represented by her present counsel, John B. Warren, Esq., who had been conveyed by her and her son, B. L. Johnson, Jr., a one-half undivided interest in the land in dispute by deed dated June 26, 1912, recorded February 4, 1916, which deed was to the firm of Warren & Simmons, and Simmons having conveyed to Warren August 10, 1917. The deed to Warren & Simmons was recorded February 4, 1916, after the trial in the district court of cause No. 10662, which case was tried February 9, 1915, at which time judgment was entered.

In said cause No. 10662, H. Masterson, one of the defendants, reconvened against B. L. Johnson, Jr., on all of said notes so secured by mortgages and sought a judgment and foreclosure thereof. The lower court in that cause, on the verdict of the jury, rendered a judgment against plaintiff for the land in controversy, and the plaintiff appealed, and this court reversed and rendered the judgment in his favor for the land in controversy, but on rehearing and application of appellee rendered judgment in favor of H. Mas-

terson for the notes involved and for a foreclosure on the land.

B. L. Johnson, Jr., through his next friend, applied for writ of error to the Supreme Court to reverse the holding of the Court of Civil Appeals foreclosing the mortgage, which was refused on June 6, 1917. Execution was duly issued on the judgment out of the district court of Brazoria county, and the land was bought by H. Masterson at sheriff's sale for $6,500, to be credited on his judgment; and H. Masterson in turn, in satisfaction of his general warranty on the administrator's deed to George H. Bingham, conveyed the same to him by deed dated August 18, 1917. The Court of Civil Appeals in said opinion held that Masterson was an innocent purchaser for value of said notes in that the original payees, from whom he purchased, had no notice of the unrecorded deed to B. L. Johnson, Jr.

Plaintiff brought this suit on March 22, 1919, in straight trespass to try title, and went to trial on September 5, 1921, on his third amended original petition, filed March 18, 1921.

The evidence further shows that the illicit relations between B. L. Johnson, Sr., a white man, and Amanda Whitfield, a negress, began about the year 1894 and continued until the death of Johnson in 1912. Four children were born to them as fruits of their illicit intercourses. These four children, all of whom are minors, were made defendants in this suit and were represented in the trial by a guardian ad litem, appointed by the court. These parties lived together on several places in Brazoria county near the land in controversy prior to the purchase of the land by Johnson in 1907. The exact date on which they began living together on the land in controversy is doubtful, but it was not earlier than 1909, or later than 1911. Johnson had lived on this property for several years before Amanda went there to live with him. After Amanda moved there with their children, she and they lived in the larger house, and Johnson had a small house near by, which he used as his office and in which he kept a bed. Amanda testified that this was done as a blind, and that he actually lived in the house with her. The testimony of Amanda and other witnesses for her sustain the allegations of the petition that Johnson agreed with her, when she began living with him, that they would work together as farmers, and that any property acquired by their joint efforts should be the property of both, that Amanda carried out her part of this agreement, and that the property in controversy was purchased and improved with funds derived from their joint labor. There is also evidence tending to sustain defendants' claim that Johnson, Sr., regarded the property as the common property of himself and Amanda, and that when he made the deed to their son B. L. Johnson, Jr., he recognized Amanda's right

in the property and his obligations under his agreement made with her when she began to live with him to provide a home for her and his children by her.

Under various assignments and propositions presented in their brief, appellants complain of the charge of the court instructing a verdict for the plaintiff for the land in controversy, on the ground that upon the evidence above stated appellants, if not entitled to an instruction in their favor, were at least entitled to have the issues of title raised by their pleading submitted to the jury.

[1] This contention of appellants should be sustained unless the judgment in the former suit above mentioned estops them from now claiming title to the land, or unless the evidence is insufficient to show that the holders of the several mortgages given on the property had notice or were charged with notice at the time they took the mortgages that appellants had or were claiming title to the land.

After a careful consideration of the question, we have reached the conclusion that appellee was entitled to an instructed verdict for the land for both of the reasons stated. It is hardly necessary to discuss the question as to the effect of the former judgment upon the right of B. L. Johnson, Jr., to now assert title to the land against appellee, who holds under the foreclosure sale ordered by the judgment.

The former suit, final judgment in which was rendered by this court (Johnson v. Masterson [Tex. Civ. App.] 193 S. W. 201), was brought by B. L. Johnson, Jr., suing by Amanda Whitfield, as his next friend, against H. Masterson and others, to recover title and possession of the land in controversy in this suit. H. Masterson by cross-bill declared upon the notes and mortgages executed by H. L. Johnson, Sr., which we have before set out, and asked that, in event the title to the land be found in B. L. Johnson, Jr., he, as an innocent holder of said notes and mortgages, have judgment for the debt thereby evidenced with foreclosure of his mortgage lien upon the property. The final judgment rendered by this court (from which a writ of error was refused by the Supreme Court) adjudged the title to the land to be in B. L. Johnson, Jr., and gave judgment for H. Masterson on his cross-bill for the amount of his debt, and establishing and foreclosing the mortgage liens on the land. Under this judgment of foreclosure the land was sold, and plaintiff now holds the title of the purchaser at this sale. It is clear that appellee's plea of res adjudicata against B. L. Johnson, Jr., was properly sustained by the trial court.

The right of B. L. Johnson, Jr., to recover in this suit depends upon whether H. Masterson was an innocent holder of the notes and mortgages on the land executed by B. L. Johnson, Sr. That was the identical issue presented by the pleadings and evidence in the former suit in which B. L. Johnson, Jr., and H. Masterson were parties. Under this state of facts, by every recognized test, the former judgment is conclusive against B. L. Johnson, Jr., on that issue as to H. Masterson and those holding under him. Moore v. Snowball, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596; Russell v. Farquhar, 55 Tex. 355; 17 R. C. L. 485.

[2, 3] We are also of the opinion that the judgment in the former suit is conclusive against the claim asserted in this suit by appellants Amanda Whitfield and J. B. Warren.

Appellee pleaded in this suit as follows:

"Plaintiff especially pleads said judgment and decree in said cause and proceedings therein as a complete bar to any rights of the defendant Amanda Whitfield Laurie herein, and here says that the said Amanda Whitfield is in all things estopped by said judgment from asserting in this cause that she is the owner of any interest in said land, she having appeared in said former and previous suit as the next friend of B. L. Johnson, Jr., and asserted that the title to said land was in the said B. L. Johnson, Jr., which in all things now estops her from now asserting in this cause that she owned any rights by reason of the secret arrangement between her and B. L. Johnson, Sr., whereby she paid one-half of the purchase money in said land, and is likewise estopped from asserting any secret rights or trusts under said deed from B. L. Johnson, Sr., to B. L. Johnson, Jr., she having heretofore asserted in said former litigation that all of the estate, legal and equitable, passed under said conveyance to B. L. Johnson, Jr., and plaintiff here and now pleads said former suit and the judgment rendered therein as a complete estoppel and adjudication of any such rights now asserted herein by the defendant Amanda Whitfield Laurie; that, had she disclosed her asserted claims and those of the children, they would have been made parties, but, having caused the said Harris Masterson to believe they had no interest, and said notes now being barred, she is estopped to assert such interest now.

"Plaintiff further shows the court that said Amanda Laurie (née Whitfield) is in all things estopped by her acts from now claiming any interest in said land; that she always took the position that the property belonged to B. L. Johnson, Jr., for the purpose of misleading the plaintiff and those under whom he claims; that she personally told the plaintiff on one occasion for plaintiff to buy the land, as she could not hold it and could not get up the money to buy it herself at the administrator's sale in the administration of the estate of B. L. Johnson, Sr., in the county court of Brazoria county, Tex., and all which acts, statements, and positions taken by the said Amanda Whitfield plaintiff now pleads as an estoppel against her, as well as against those claiming with her herein. * * *

"Plaintiff here pleads specially the judgment in cause No. 10662, styled B. L. Johnson, Jr., v. George H. Bingham et al., was res adjudicata of all the rights asserted herein by the defendant Warren, and in this connection, and as an additional plea of estoppel herein, respectfully shows to the court that the defendant Warren was the attorney for the plaintiff B. L. Johnson, Jr., suing through Amanda

Whitfield, as next friend, in said above numbered and entitled cause; that he personally prepared the pleadings in said case and tried the case, and that in that case he contended that all the title to the land involved in this litigation and which was involved in that litigation was the property of B. L. Johnson, Jr., and that it was the duty of said defendant Warren, if he claimed any rights under an unrecorded deed at that time as alleged in his third original answer, to have asserted such right as he was personally present in court when the defendant H. Masterson in said cause No. 10662 foreclosed his mortgages on said property; that the defendant Warren, having in that case as an attorney asserted that the title was in B. L. Johnson, Jr., he is estopped now in all things to make a different assertion in this case."

The petition in the former suit which was brought by Amanda Whitfield as next friend of B. L. Johnson, Jr., contains the following allegations:

"Plaintiff alleges that he is the owner in fee-simple title of the said land hereinafter described and is entitled to the possession thereof; that on March 1, A. D. 1912, the defendants unlawfully and without right entered upon the said land hereinafter described and dispossessed this plaintiff therefrom and now withholds from the plaintiff the possession thereof; that the land of which the plaintiff is the owner, and of which he has been dispossessed, is described by metes and bounds as follows: [Here follows real estate.]

"As his title, the plaintiff alleges that heretofore, to wit, on December 8, A. D. 1908, B. L. Johnson was the owner of said land in fee-simple title, using and occupying the same as the homestead of himself and minor children and their mother, to wit, this plaintiff, B. L. Johnson, Jr., and Johnnie Johnson, Marie Johnson, and Amanda Whitfield, and on said date for a good and valuable consideration, to wit, love and affection, conveyed the said land by a general warranty deed, made, executed, and delivered by the said B. L. Johnson to the plaintiff B. L. Johnson, Jr.; that said deed was acknowledged on the 8th day of December, 1908, before A. R. Hamblen, a notary public, Harris county, Tex.; that said deed was duly recorded in the Deed Records of Brazoria county, Tex., on the 9th day of February. A. D. 1912, at 1 o'clock p. m., in volume 113, p. 139, a copy of which is hereto attached and made a part thereof.

"Plaintiff alleges that he and his mother, Amanda Whitfield, and his brothers and sisters were living on said land and occupying and using the same as a homestead at the time of the death of B. L. Johnson, Sr., and have continuously since said time been living on, using, and occupying same as their homestead; that the same was rented by his mother, Amanda Whitfield, for his use and benefit, to sundry tenants during the year 1912, and the said tenants lived on said place and produced crops thereon under their tenancy with plaintiff."

This petition was prepared by appellant J. B. Warren, who represented B. L. Johnson, Jr., as his attorney upon the trial of the former suit. The evidence fully sustains all of the allegations of the pleadings before

set out as to the conduct, attitude, and claim of these appellants in the former suit. It is a well-settled rule of law that the binding effect of judgments is not confined to those whose names appear upon the face of the judgment as the parties affected thereby.

"Neither the benefit of judgments, on the one side, nor the obligations, on the other, are limited exclusively to parties and their privies. Or, in other words, there is a numerous and important class of persons who, being neither parties upon the record nor acquirers of interests from those parties after the commencement of the suit, are nevertheless bound by the judgment. Prominent among these are persons on whose behalf and under whose direction the suit is prosecuted or defended in the name of some other person. As is illustrated by the case of trustee and cestui que trust, the real party in interest cannot escape the result of a suit conducted by him in the name of another. The fact that an action is prosecuted in the names of nominal parties cannot divest the case of its real character, but the issues made by the real parties, and the actual interests involved, must determine what persons are precluded from again agitating the question, and who are estopped by the previous decision. Whenever one has an interest in the prosecution or defense of an action, and he, in the advancement or protection of such interest, openly takes substantial control of such prosecution or defense, the judgment, when recovered therein, is conclusive for and against him to the same extent as if he were the nominal, as well as the real, party to the action."

The above quotation is from the opinion of the United States Court of Appeals in the case of Hauke v. Cooper, 108 Fed. 922, 48 C. C. A. 144, citing Freeman on Judgments, § 174.

The principle upon which the rule is based is thus concisely stated by the Supreme Court of Tennessee in the case of Johnston v. Railway Co., 146 Tenn. 135, 240 S. W. 429:

"The principle underlying these decisions runs throughout the administration of justice, and is that a litigant who has deliberately taken a position will not as a matter of law be allowed to advantage himself by taking an inconsistent one either in the same or in another suit."

[4] The estoppel created by acts and conduct in a former litigation involving the same subject-matter sought to be litigated in a second suit is not strictly dependent upon the general principles on which estoppel in pais rests.

"The rule that a party will not be allowed to maintain inconsistent positions in judicial proceedings is not strictly one of estoppel, partaking rather of positive rules of procedure based on manifest justice, and, to a greater or less degree, on considerations of the orderliness, regularity, and expedition of litigation. Certainly the elements of reliance and injury do not enter into such so-called estoppel to the same extent that they do in equitable estoppel proper." 10 R. C. L. 698.

The appellant J. B. Warren acquired his interest in the land long prior to the trial of

the former suit, and obtained it from Amanda Whitfield as his fee for representing her and B. L. Johnson in bringing and conducting the trial of that suit. In these circumstances he is, under the principles announced in the authorities above cited, as clearly estopped by the former judgment as Amanda Whitfield. We think the question of the estoppel of both of these appellants is concluded by the opinion of our Supreme Court in the case of Houston Oil Co. v. Village Mills Co., 241 S. W. 122. The opinion in that case is an exhaustive one, and cites in its support a number of authorities from this and other states.

[5] We are inclined to hold that the evidence is insufficient to ingraft a parol trust in favor of the minor appellants upon the deed from B. L. Johnson to B. L. Johnson, Jr., which is absolute unconditional on its face. The evidence relied on to establish this trust are statements made by the grantor at the time the deed was delivered. The statements were made in answer to questions as to why he had put the title in the boy alone, and had not mentioned the girl, "Dutch," or Johnnie, Johnson. This was before the birth of the other minor appellants.

Lucy Cole, the mother of Amanda, testified:

"When he read the deed to me I caught that he had done put it all in the name of the boy, B. L., and I said, 'Mr. Johnson, why did you do that when you have Dutch?' and he said, 'Because Dutch is a girl, and when she gets grown up some day or nother she might marry some fellow and would want to separate her part and take it away; that he might be a damn gambler and want her part;' and then I said, 'Mr. Johnson, it ought to be in her name, too;' and he said, 'No; I put it in the boy's name, but it is for all of them; I ain't going to separate it; it was for all of them, but I don't want it to get separated up; I put the boy's in front because he is a boy and he ain't going to carry out nothing; he will bring it in.'"

Amanda Whitfield testified that, when he gave the deed to the boy, Johnson said, "This is a home for you," and that, when her mother asked why the deed was made to the boy alone, Johnson replied:

"That the reason he had put it into the boy's name was because you have got to be careful about anything like this, and he said that Dutch —that is what he called the girl—Dutch being a girl, that it would not be right to put it in her name, but that it was as much for her as for the boy and his mother, but that he only had it put in the boy's name because that when the boy grew up and got to be a man and married that he would not be taking anything out of the place, but would bring things into it, while Dutch, being a girl, and when she growed up and got married and a husband and some disinterested party or fellow come in, and they would want to sell her part of the property and cause trouble, and that it was best for it all to be in the boy's name, and that was why he had put it in the boy's name, and he sayd, 'I mean it for Amanda, Dutch, and the boy and for whatever children may come, for one and

all,' and he said, 'That is why I put it in the boy's name.'"

Alex Langston, who was present and heard this conversation, testified:

"Luch Cole asked him how came him to put the deed all in the boy's name, B. L. Johnson, Jr.'s, name, and he said that he had put it all in B. L.'s name because he was a boy, and that Johnnie Johnson was a girl, and that she would get married, and her husband would come in and split up the land. He said that he meant the property for Mandy and her children."

[6] We do not think this evidence is of that clear, satisfactory, and explicit character necessary to establish a trust. The rule as to the character of evidence required to ingraft a trust upon a deed absolute on its face is thus stated in 39 Cyc. p. 88 et seq. It seems to us that these statements of Johnson's were excuses or reasons for his not wanting his children other than B. L. Johnson, Jr., to have any title or right in the land, legal or equitable, rather than a declaration that he intended by the deed to give them an equitable title. His statement as to the property being a home for them all should be regarded as precatory, merely expressive of his desire and expectation that B. L. Johnson, Jr., would allow them to live on the land as long as they had no other home.

[7] If this holding is unsound, these appellants are nevertheless barred of any recovery because the undisputed evidence shows that Masterson was an innocent holder of the notes and mortgages executed on the land by B. L. Johnson, Sr., the original mortgagees having no notice of the unrecorded deed to B. L. Johnson, Jr., at the time they acquired the mortgages. This being so, the foreclosure of the mortgages by Masterson without notice of the claim of the minor appellants foreclosed any title they may have had in the property, and the title of the appellee acquired through this foreclosure, and sale thereunder is free from such claim. Webb v. Maxan, 11 Tex. 678; Adoue & Lobit v. La Porte, 58 Tex. Civ. App. 206, 124 S. W. 134.

[8] B. L. Johnson being the holder of the legal title at the time he executed the mortgages, the burden was upon the appellants to show that those who took the mortgages from him had notice of the equities now asserted by appellants. Kimball v. Houston Oil Co., 100 Tex. 336, 99 S. W. 852; Baldwin v. Post, 90 Tex. 546, 40 S. W. 3; Barnett v. Squyres, 93 Tex. 193, 54 S. W. 241, 77 Am. St. Rep. 854.

[9] There is no evidence that these mortgagees had any actual notice, and the only circumstance relied on to charge them with notice is the fact that Amanda and her children were living on the place with Johnson at the time the mortgages were executed. It is clear that this was not such possession of the property by Amanda and her children as

would charge a purchaser from Johnson with notice of their claim in the land. They were apparently on the land as the servants or tenants of Johnson, who also lived there, and who held the legal record title. In these circumstances their presence on the land, if it could be termed possession, must be regarded as at all times attributable and subservient to his title and possession. Hayworth v. Williams, 102 Tex. 308, 116 S. W. 43, 132 Am. St. Rep. 879; Paris Grocery Co. v. Burks, 101 Tex. 106, 105 S. W. 174.

Upon the same principle the possession of Amanda and her children, after the death of Johnson, Sr., and the record of the deed to B. L. Johnson, Jr., would be attributable to the legal title held by B. L. Johnson, Jr., and did not charge Masterson with notice of appellants' claim so as to require them to be made parties to the foreclosure proceedings.

[10] There was no error in awarding plaintiff a joint and several judgment against all of the defendants. They were in joint possession claiming undivided interest in the land, and as to plaintiff were joint trespassers. The fact that as between themselves they may have been entitled to have the rents due plaintiff apportioned does not affect plaintiff's right to a joint and several judgment against them all for the rents found by the jury. Kirby v. Conn (Tex. Civ. App.) 156 S. W. 233.

[11] Appellants very earnestly insist that the record shows reversible error in the action of the trial court permitting plaintiff to amend his pleading after the verdict of the jury had been returned.

The question is one of first impression in this state, and upon first blush it might appear that no amendment of the pleading could be allowed after the verdict, but, when well-settled principles of law are applied to the facts disclosed by this record, we think there was no error in the ruling permitting the amendment.

Plaintiff's original petition alleged that the rental value of the land was "the sum of $10 per acre per year." In the amended petition upon which the case was tried the words "per acre" were omitted from the allegation. This omission was inadvertent and was not discovered until after the verdict. Upon the issue of the rental value of the property, all of the evidence offered by the plaintiff and the defendants as well fixed such value at so much per acre, and the jury, in answering the special issues submitted to them on the rental value, found the value per acre.

This issue was tried, submitted, and determined by the jury upon an acre basis. It is perfectly clear from these facts that, if the amendment had been made before the trial, it would not have affected the verdict. This being so, no possible injury to appellants could have resulted from permitting the amendment after the verdict so that the pleading would accurately reflect the issue as intended to be presented, and as tried and determined.

The general rule upon this question is thus stated in 31 Cyc. 203:

"It is within the sound discretion of the trial court to grant or to refuse amendments after verdict, and the proper exercise of that discretion will not be disturbed on appeal. But, while amendments may be made after verdict in order to sustain it, they cannot be allowed for the purpose of overthrowing it. An amendment will cure error, not create it. In general, an amendment that in no wise changes the issues, or which would not have affected the verdict if made before trial, is permissible. So an amendment may be allowed, after verdict, presenting an issue upon which both sides have introduced evidence; but amendments after verdict changing the issues so as to require a new trial should be refused. No amendment will be permitted presenting any issue not fairly contested at the trial and submitted to the jury under proper instructions, or changing the nature of the claim. And a party will not be allowed to amend his pleadings after verdict upon a point submitted and already fully covered by the original pleadings. An amendment may be treated as made before verdict when permission to amend was given, although the amendment was in fact made after verdict."

Many cases from other jurisdictions are cited in support of this text.

As we have before stated, there is no case in this state directly in point, but the not infrequent practice of proceeding with a trial with the understanding that an amendment will be filed thereafter has been approved by our courts. Foster v. Eoff, 19 Tex. Civ. App. 405, 47 S. W. 399 (writ of error denied). Our courts have also uniformly held that the provision of our statute requiring all amendments to pleadings to be filed "before parties announce ready for trial, and not thereafter," is merely directory. Railway Co. v. Butler (Tex. Civ. App.) 34 S. W. 756; Railway Co. v. Goldberg, 68 Tex. 685, 5 S. W. 824; Harris v. Spence, 70 Tex. 616, 8 S. W. 313. We think the rule above quoted from Cyc. is sound and should be followed by our courts.

We have discussed in this opinion, which is already too long, all the material questions presented in appellants' brief. All of the propositions presented in the brief have been duly considered, and in our opinion none of them should be sustained.

It follows that the judgment should be affirmed; and it is so ordered.

Affirmed.