Mary Jane HARDIN et al., Appellants,

v.

Ruby Wheatley COTTON et al., Appellees.

No. 6069.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 21, 1957.

Rehearing Denied April 3, 1957.

Sam G. Croom, Houston, Robert F. Atkins, Coldsprings, for appellants.

Jeff Cochran, John T. Buckley, Cleveland, for appellees.

HIGHTOWER, Justice.

This is an action in trespass to try title to 252 acres of land situated in the John Stewart League in San Jacinto County, Texas. This suit was brought by Ruby Wheatley Cotton and Elizabeth Wheatley Dailey, joined by her husband, Otis Dailey, children of Dennis S. Wheatley, against Mary Jane Hardin and other heirs at law of Mack and Matilda Wheatley, intestates, who were the parents of Dennis S. Wheatley. The trial began on the 22nd day of February, 1956, but the record fails to disclose the dates of service of citation on the defendants.

The case was tried before the court and a jury. After all parties had rested, the court granted a motion for an instructed verdict filed by the plaintiffs.

Appellants duly excepted to the court's action in granting said instructed verdict, and the judgment rendered thereon, and, thereafter, perfected their appeal to this court, where they have urged the impropriety of the court's action.

It appears that the property was conveyed by John A. Dupree, to Mack Wheatley, by general warranty deed of December 30, 1886, the balance being secured by vendor's lien note for $700 payable in seven annual installments of $100 each, with 10% interest, beginning December 15, 1887.

After the death of Mack Wheatley in 1906, predeceased by his wife, three of his heirs-at-law executed a quitclaim deed, February 6, 1909, to Dennis S. Wheatley, deceased son of Mack Wheatley, who was also the father of the appellees, which unquestionably entitled him to an undivided half interest in the land in dispute. In 1908 Dennis began payments of taxes which continued through the year 1929, and on March 4, 1909, he paid the balance remaining on the note of about $300.

It is appellees' contention that on Christmas Day, 1887, Mack Wheatley told his son, Dennis, that he could have his equitable interest in the land in question if he would pay the remaining notes; that shortly thereafter, Dennis accepted such offer and that by reason of subsequent events the legal title reposed in trust for Dennis Wheatley.

The following summary of the evidence is necessary in determining whether there was, in connection with the alleged trust, an issue to be determined by the jury.

Preston Wheatley, one of Mack Wheatley's sons, and the only living witness professing knowledge of the alleged transaction between his father and Dennis Wheatley, stated, on the trial, that on December 25, 1887 his father, Mack Wheatley, called his four sons together and stated, "Boys, I am not going to be able to pay for this land. I don't want to lose it. I bought it for the simple fact I bought it. Which one of you will be able to finance it." That it would belong to the one that paid for it; that Dennis finally took it; that Dennis, although he was living out of the county,

took possession of the land in 1889; that he placed tenants on it; that Mack and Dennis managed the place for several years, "but brother was * * * in fact, in fact they did the hiring and tending the place, of the hands on the place"; that all the boys took charge to help manage it; that it was all fenced; that only 45 or 50 acres was ever fenced. Asked if Mack Wheatley would take charge when Dennis was in Moscow in '89, or get some of the other children to help him, he replied, "he wasn't there at the time, wouldn't know anything about what Mack did, and couldn't possibly say what Dennis did while he, Preston, was gone out of the county and state so often.

In rebuttal of the foregoing testimony, counsel for appellants introduced portions of the same witnesses' deposition taken prior to trial, of which the following is a substantial summary:

That during the holidays Mack Wheatley called his children together and told them that he was not able to proceed to work and that some of them would have to take over the payments of the land, on which he was two behind; that he offered it to him, the witness; offered him 50 acres of land if he would do it; that he refused; that Dennis finally got a school teaching job at Camilla in 1888, paying $50 per month, and that was why he took it; that he, the witness, put the first tenant on the land in 1887, and that he put him on there for Mack Wheatley; that he was gone, off and on, until 1933, and that during his absence Dennis looked after his father's business, trying to help him; that Dennis built no fences after 1888, but did repair them, together with two houses on the place.

Appellants contend, citing Lynch Oil Co. v. Shepard, Tex.Civ.App., 242 S.W.2d 217 (E. ref.) that where there is conflict in testimony given by a witness in a deposition and in the trial, it is for the jury alone to determine which is correct; particularly where the witness, as claimed by appellants, is one of interest.

Reserving for later discussion the alleged interest of the witness, it is noted, however, that there arises, from the testimony on the deposition, the compelling inference that Dennis Wheatley did not presume to engage in a binding contract for the land with his father, but, to the contrary, that he was endeavoring to aid his father and family. But, should this witness' testimony on the trial be considered as only an elaboration of that in his deposition, could it then be held to be such "clear, unequivocal testimony" as is held to be necessary in order to engraft a parol trust upon a deed absolute on its face? We think not. "In order to engraft a parol trust on an absolute, unconditional deed the evidence must be clear, satisfactory, and explicit." So, conversely of the rule by which we are bound in construing the propriety of instructed verdicts, it appears doubtful that this testimony, standing alone, would support a jury finding, and it being resolved that the foregoing testimony of witness, Preston Wheatley, is of such precatory nature as to, standing alone, be insufficient to establish the trust, the paramount question seems to be whether such testimony, together with that hereinafter mentioned, is so compelling that reasonable minds would not be justified in concluding otherwise. Johnson v. Bingham, Tex.Civ.App., 251 S. W. 529; Mead v. Randolph, 8 Tex. 191; Blumenthal v. Nussbaum, Tex.Civ.App., 195 S.W. 275.

Appellees introduced the original note executed by Mack Wheatley to J. A. Dupree, his vendor, in the sum of $700, as of December 30, 1887, on the back of which was noted, in longhand, that twelve payments of sums ranging from $11 to $100 were applied to the note on various dates from January, 1888, to, and including, March, 1901. To these notations of payment went appellants' objection that the same were hearsay. To such objection the court replied, "It is a question of fact—probative rather than the admissibility of it." It may well be added that it was indeed a question of fact—the fact of who

made such payments. Massey v. Lewis, Tex.Civ.App., 281 S.W.2d 471. Only four of these payments were noted to have been made by Dennis Wheatley, and these were in the years of 1893 and 1894, two bearing the purported signature of J. A. Dupree, and the other being unsigned, as were seven of the other notations of payments.

■■ That such statements would ordinarily be inadmissible to denote acceptance of the alleged offer of Mack Wheatley's, and the payment thereunder by Dennis Wheatley, there can be no doubt, and unless they be established to be entitled to consideration under the principles relating to res gestae, accounts, declarations against interest, ancient instruments, or other exceptions to the hearsay rule, they were improperly considered in the instant case, whether objected to or not, and no greater verity is inherent in the instrument simply because it is of ancient origin, than it would be otherwise entitled to. The memoranda was submitted into evidence naked, barren of explanation of its custody, the unavailability of the persons making them, or reasons of their admissibility under exceptions to the rule against hearsay, and after labored study of the instrument, the record and the law, as it relates to the elements entailed, no exception is discerned.

■ Various other letters and receipts evidencing other payments by Dennis Wheatley were submitted over appellants' objections that they were photostats of originals unaccounted for. Under such state of the record, alone, they are not to be considered, and all the foregoing cannot amount to conclusive evidence of the creation of the parol trust, so as to warrant the instructed verdict for the appellees here.

As regards the evidence on the issue of limitations, it appears that Dennis Wheatley died about two years prior to suit, and that he conveyed the entire 252 acres to appellees, in 1930, by metes and bounds, which deed was then duly recorded. It is undisputed that the property had the reputation of belonging to Dennis Wheatley from about the year he is alleged to have taken possession, and after his deed, to appellees. It appears highly improbable that a substantial portion of the land was ever completely fenced. There is unimpressive testimony by one of the appellees that at some undetermined time timber was sold by them of some unspecified quantity. The testimony conflicts as to whether Dennis Wheatley claimed the land prior to his father's death in 1906 to the exclusion of other members of the family. Appellees, or those under whom they claim, placed tenants on the land about the year 1912, who remained there through 1954; they collected the rents, "share crop", to the exclusion of other heirs and paid the taxes, though not seasonably, from the date of their deed to the date of suit; at no time were any members of any of the families living on the property. There is no positive evidence that appellants, or those under whom they claim, ever had actual notice of adverse claim.

■ Omitting then, the question of trust, it is clear that upon his father's death in 1906, Dennis Wheatley became a tenant in common with the other heirs, and the renting and use of the land by him was rightful as a cotenant but, and considering his dissolution of the vendor's lien and payment of the taxes, his acts were not such as would constitute disseizin and notice of adverse claim in himself as a matter of law, and appellees, to effect appellants with the adverse character of their holding, must have brought notice home to them directly, or established such acts of unequivocal notoriety as would impute notice to them as a matter of law, and the taking and registering of a deed by them from appellants' former cotenant is not conclusive of such notice and was a question for the jury. McCoy v. Long, Tex.Com.App., 15 S.W.2d 234; Stiles v. Hawkins, Tex.Com.App., 207 S.W. 89, and cases there cited; Gilkey v. Peeler, 22 Tex. 663; Myers v. Frey, 102 Tex. 527, 119 S.W. 1142; Scofield v. Douglass, Tex.Civ.App., 30 S.W. 817; Towery v. Henderson, 60 Tex. 291.

Had appellees, after registering their deed, materially changed the expression of the land, another view might well be accorded, but this they did not do. They presumably sold some timber, collected the rents, which latter action was not suspect considering their relation to their grantor, and paid the taxes. At the date of their deed a small portion of the property was being used by a tenant who had been on it, under their grantor, for the past twenty-one years, and such tenant continued on it, without interruption, to almost the very institution of this lawsuit. There never was such a change of possession as would indicate a repudiation of appellees' rights as would bind them with notice of an adverse claim as a matter of law. The expression of the land was never changed. McCoy v. Long, supra; McBurney v. Knox, Tex.Civ.App., 259 S.W. 667; Id., Tex.Com.App., 273 S.W. 819.

Appellees urge, as sustaining the directed verdict, under the 10-year and 25-year statutes of limitation, the well established line of authority, as laid down in McBurney v. Knox, supra, that it is a familiar rule in this state that where one tenant in common executes a deed purporting to convey the entire premises to a third person, who enters into possession thereof, claiming title to the whole, this will constitute a disseizin of the cotenants and after the expiration of the statutory period will bar the rights of the cotenants to recover. Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352; Little v. Wagner, Tex.Civ.App., 5 S.W.2d 232; McCook v. Amarada Petroleum Corp., Tex.Civ.App., 93 S.W.2d 482.

It cannot be questioned that appellees occupied the position of stranger to the title of appellants. The rule, however, in McBurney v. Knox, supra, is not thought to be controlling of the facts as they here exist. There the conveyance was by one cotenant to a stranger who forthwith recorded his deed and leased the whole of the property to a stranger who forthwith went into possession, cultivating and otherwise using it. These new faces, and the startlingness of their occupancy was foreign to the land and

adverse to the claim of other parties of interest. The expression of the land was abruptly changed, and the possession pointed to the records for the nature of their claim. Jones v. Siler, supra.

■ It is not sufficient that the claim only be adverse, but the possession and use must have been such as to reasonably indicate its adverse nature. The manner of occupancy, in view of the nature of its commencement, was not sufficient in the instant case to constitute adverse possession as a matter of law. Evans v. Templeton, 69 Tex. 375, 6 S.W. 843; Luhning v. Stewart, Tex. Civ.App., 103 S.W.2d 184. "The recording of the deed, without possession by the grantee, would not have given notice. This because of the general rule that one is not charged with notice by the registration of an instrument which is not in his chain of title," Jones v. Siler, supra [129 Tex. 18, 100 S.W.2d 355].

We hold that the evidence is not sufficient to support the conclusion that appellees, plaintiffs below, had title by limitation as a matter of law. At the most, the evidence only raised a fact issue for the jury.

■■ Appellants, for the first time, under the authority of McDonald v. Simons, Tex.Com.App., 280 S.W. 571, contend, under the theory of fundamental error, that the case should be reversed in order that the witness Preston Wheatley, one of the heirs who appears to own a one-eighth interest in the land, may be made a party to the suit. By reason of such authority, and that of Ball v. Cundiff, Tex.Civ.App., 127 S.W.2d 502, they assert that Preston Wheatley was an indispensable party. However, under the authority of Johnson v. Bingham, supra, he would have been estopped from asserting such interest had judgment herein been in appellees' favor, and it may be added that inasmuch as his testimony was against his interest, it would not be affected by the holding in Lynch Oil Co. v. Shepard, supra.

The judgment of the trial court is reversed and remanded.